*1413 OPINION
By the Court,
Springer, C. J.:
Appellant Clifford Stubbs contends that the State breached a written plea agreement by calling a witness at the sentencing hearing to give victim impact testimony and by making certain comments to the sentencing judge. We agree that the prosecutor’s comments, were error and order a new sentencing hearing.
Pursuant to an agreement between Stubbs and the State, Stubbs pleaded guilty to first-degree murder with the use of a deadly weapon. The plea agreement merely stated: ‘ ‘In exchange for my plea of guilty, the State, my counsel and I have agreed to recommend the following: The State will stipulate to life with the possibility of parole.” The record reflects that, upon entering the negotiated plea, counsel for Stubbs informed the court of the negotiations as follows:
[Wje’ve entered into negotiations with the State. In return for Mr. Stubbs’ plea to the charge in the information, the State has agreed to stipulate that he receive life with the possibility of parole, with an additional [term of] life with the possibility of parole for the enhancement.
Defense counsel acknowledged that the district court would not be bound by the stipulation at the time of sentencing.
In spite of the plea agreement, at sentencing the prosecutor commented at some length upon the State’s assessment of the ‘ ‘practical reality’ ’ of the case if it were to go to a jury and why he felt constrained to enter into the bargain rather than risk a “compromised verdict.”[1] The State also called the victim’s *1414 daughter to present a victim impact statement. The State then rested without further comment. Thereafter, the district court sentenced Stubbs to consecutive life terms in the Nevada State Prison, without the possibility of parole.
The day after sentencing, an article appeared in a local newspaper noting that the district court had rejected the plea bargain and quoting the prosecutor as saying, “It was exactly the way I planned it to happen.” The defense filed a “Notice of Newspaper Article.” Stubbs appeals, arguing that the prosecutor breached the plea agreement.
“[Wjhen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” Santobello v. New York, 404 U.S. 257, 262 (1971). Thus, this court has repeatedly held that when the state enters into a plea agreement, it is held to “the most meticulous standards of both promise and performance.” See, e.g., Statz v. State, 113 Nev. 987, 992, 944 P.2d 813, 816 (1997); Citti v. State, 107 Nev. 89, 91, 807 P.2d 724, 726 (1991); Van Buskirk v. State, 102 Nev. 241, 243, 720 P.2d 1215, 1216 (1986); Kluttz v. Warden, 99 Nev. 681, 683-684, 669 P.2d 244, 245 (1983). Violation of either the terms or the spirit of the agreement requires reversal. Citti, 107 Nev. at 91, 807 P.2d at 726.
In Statz, this court held that the prosecutor, at the sentencing hearing, violated a plea agreement to stipulate to a certain sentence by calling the victim’s father to testify and commenting on the circumstances of the crime. We reasoned that if the state “intends to retain the right to present facts and argument pertaining to sentencing, such a limited commitment should be made explicit” in the plea agreement. Statz, 113 Nev. at 993, 944 P.2d at 817.
*1415 In the present case, there is no indication in this stipulation that the State intended to reserve the right to comment upon the circumstances of the crime or the reason for the plea bargain. Accordingly, following Statz, we conclude that the State violated the plea agreement by relating a disparaging assessment of the case to the court.
“The violation of a plea bargain by the state requires reversal.” Statz, 113 Nev. at 995, 944 P.2d at 818 (citing Van Buskirk, 102 Nev. at 243, 720 P.2d at 1216). This court orders specific performance of a plea agreement where it will implement the parties’ reasonable expectations and there is no new information or change of circumstances which would bind the sentencing court to an unsuitable disposition. Van Buskirk, 102 Nev. at 244, 720 P.2d at 1216-17. Absent any such new information or change of circumstances, we conclude that Stubbs is entitled to specific performance of the plea agreement as negotiated.
We do not agree with Stubbs thát the calling of a victim by the prosecutor violated the plea agreement or our holding in Statz. The prosecutor in Statz called upon a victim witness to give substantive testimony at sentencing. Further, the State is statutorily required to notify victims to facilitate their availability during the sentencing process. See NRS 176.015. The mere introduction by a prosecutor of a victim witness to the court and submitting a few neutral preliminary questions to the witness should not have any substantive effect on a judge’s decision. The State calling victims to present impact testimony does nothing more than comply with the law and facilitate the process of presenting victim impact evidence.
For the reasons stated above, we vacate Stubbs’ sentence and remand this case for a new sentencing hearing.
Rose and Young, JJ., concur.

 At Stubbs’ sentencing hearing, the prosecutor had this exchange with the court:
Mr. Stanton: Well, it’s practical reality of what the State assesses as the chances, as you know as a former prosecutor, in a jury trial, and anything is possible in a jury trial. The State assessed this case as follows: This was a First Degree Murder case with the use of a deadly weapon. The attendant injuries of Mr. Stubbs were real and significant. The State was in the mind that a jury seeing the videotape of the crime scene of which exists and graphically depicts the extent of Mr. Stubbs injuries which is not reflected in how he appears before the Court even with the scars on his neck. He was virtually disemboweled. That, coupled with the ingestion and use of narcotics by both parties involved here renders the possibility of a diminished capacity defense, not a true defense, as the Court knows does not exist in the State of Nevada, but one where a jury either through a compromised verdict would come up *1414 to a less than a First Degree Murder, for example a Second Degree Murder.
The Court: All right.
Mr. Stanton: Secondly, this offense occurred after the adoption of the new crime bill that had this murder taken place prior in the month of June, the potential sentence on a First Degree Murder would have been half of what it is now, 20 years before he becomes eligible for parole. It is now doubled to 40 years with the increased sentence. The State weighed after talking with the victim’s family, both the two brothers of Ms. Marshall here in Reno, the brother in Texas who you received a letter from as well as through Monique’s parents in San Diego, discussion with them of the realities of what could happen in front of a jury, what the potential punishments were. The State felt it was in the State’s best interest as well as the victims’ to ensure a First Degree Murder conviction as to risk a compromised verdict in front of a jury.