# IN THE SUPREME COURT OF IOWA

No. 116 / 06–0916

Filed April 18, 2008

**STATE OF IOWA**,

    Appellee,

vs.

**GREAGORY ALLEN BEARSE**,

    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, J. Hobart Darbyshire and Charles H. Pelton, Judges.

Appellant seeks further review of court of appeals decision affirming the district court judgment and sentence following a guilty plea to third-degree sexual abuse. **DECISION OF COURT OF APPEALS VACATED; SENTENCE VACATED; CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, William E. Davis, County Attorney, and Joseph A. Grubisich and Robert Weinberg, Assistant County Attorneys, for appellee.

**CADY, Justice.**

In this appeal from a guilty plea and sentencing for third-degree sexual abuse, we must decide whether trial counsel was ineffective in failing to object to an alleged breach of a plea agreement by the prosecutor. We conclude the prosecutor breached the plea agreement and counsel was ineffective in failing to object. We preserve the claim that defense counsel was ineffective for failing to file a motion in arrest of judgment to challenge the alleged involuntariness of the plea. We affirm the conviction, but vacate the sentence and remand for resentencing.

### I. Background Facts and Proceedings.

Greagory Bearse was charged by trial information with the crime of sexual abuse in the third degree in violation of Iowa Code section 709.4(2)(*c*)(4) (2005). The State claimed Bearse engaged in a long-term sexual relationship with a fourteen-year-old girl. Bearse was thirty-seven years old at the time. The relationship was revealed after the girl became pregnant. Bearse's attorney eventually negotiated a plea agreement with the State prior to trial. The agreement required Bearse to enter a plea of guilty to the charge and required the State to recommend against incarceration at the time of sentencing, "recognizing that the court may grant a deferred judgment or place the defendant on probation." The plea agreement was formalized in writing.

Bearse subsequently entered a plea of guilty to sexual abuse in the third degree at a hearing before the district court. The district court was informed of the plea agreement at the hearing, and the plea colloquy revealed the sentencing court was not bound to follow the State's sentencing recommendation. Following the hearing, the department of correctional services conducted a presentence investigation. The

presentence investigation report ultimately recommended Bearse be incarcerated.

Bearse appeared for sentencing in district court with his attorney. The prosecuting attorney who appeared for the State was not the same prosecutor who had negotiated the plea agreement and had appeared for the State at the guilty-plea hearing.

During the course of the sentencing hearing, the court asked the State to make a sentencing recommendation. In response, the prosecutor stated "[t]he State concurs in the recommendation of the presentence investigation report, your honor, for incarceration." The court immediately informed the prosecutor that the recommendation by the State was inconsistent with the plea agreement. The prosecutor acknowledged the existence of some confusion based on the contents of his file. Yet, after the correct terms of the plea agreement were identified, the prosecutor merely said: "Your Honor, the court is not bound by the plea agreement. The State is, so we'll . . . abide by the plea agreement. The court has the presentence investigation report." Counsel for Bearse did not object to the comments by the prosecutor.

At the conclusion of the sentencing hearing, the court sentenced Bearse to an indeterminate term of incarceration not to exceed ten years. The court detailed its reasons for imposing incarceration, which included the age difference between Bearse and the victim and an absence of remorse on the part of Bearse. The court did not mention the prosecutor's recommendation as a sentencing factor. Additionally, Bearse was not sentenced to the special life sentence provided for in Iowa

Code section 903B.1, and no mention of the special life sentence appears in the record.[1]

Bearse appeals and asserts two claims of error. First, he makes a two-part argument that the prosecutor breached the plea agreement by failing to recommend against incarceration, and his trial counsel was ineffective by failing to object to the breach. Second, Bearse argues his trial counsel was ineffective for failing to file a motion in arrest of judgment after the court failed to inform him at the guilty-plea hearing of the special life sentence applicable to his case. Even though the district court failed to impose the special sentence, Bearse points out the provisions would be applicable to him in the event resentencing is required.

We transferred the case to the court of appeals. The court of appeals affirmed the judgment and sentence of the district court. It determined defense counsel was not ineffective because the prosecutor did not breach the plea agreement. The court of appeals found the record inadequate for consideration of Bearse's second ineffective-assistance-of-counsel claim and preserved the issue for postconviction proceedings. We granted further review.

## II. Standard of Review.

We review ineffective-assistance-of-counsel claims de novo. *State v. Horness*, 600 N.W.2d 294, 297 (Iowa 1999).

---

[1]Iowa Code section 903B.1 requires that a person convicted of an offense under chapter 709

> shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906.

### III. Discussion.

### A. Breach of Plea Agreement.

1. *Error preservation.* Bearse concedes his trial attorney did not object during the sentencing hearing when the prosecutor allegedly breached the plea agreement. Consequently, he claims the failure to object amounts to ineffective assistance of counsel. We consider this claim on appeal. *See State v. Bergmann,* 600 N.W.2d 311, 313 (Iowa 1999).

2. *Adequacy of record for review.* Bearse argues his counsel was ineffective for failing to object to the prosecutor's breach of the plea agreement. "If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822 [postconviction proceedings]." Iowa Code § 814.7(3). "Although claims of ineffective assistance of counsel are generally preserved for postconviction relief proceedings, we will consider such claims on direct appeal where the record is adequate." *Horness,* 600 N.W.2d at 297. The record in this case clearly reflects the written plea agreement and the circumstances giving rise to Bearse's claim that the prosecutor breached the agreement, as well as defense counsel's response. As such, we find the record adequate to review Bearse's first ineffective-assistance-of-counsel claim on direct appeal.

3. *Failure to perform essential duty.* A successful ineffective-assistance-of-counsel claim requires proof by a preponderance of the evidence that (1) counsel failed to perform an essential duty, and (2) prejudice resulted. *Id.* at 298. In analyzing the first prong of the test, we presume counsel acted competently. *Id.* Counsel cannot fail to perform an essential duty by merely failing to make a meritless objection. *Id.* at

297. Consequently, to determine whether counsel failed to perform an essential duty in failing to object to the prosecutor's recommendation, we must first determine whether the State breached the plea agreement. *Id.* If the State did not breach the plea agreement, defense counsel could not have been ineffective.

We begin our consideration of this question by recognizing the important role plea agreements play in our scheme of justice and the concomitant need for strict compliance with those agreements.

> The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

*Santobello v. New York*, 404 U.S. 257, 260, 92 S. Ct. 495, 498, 30 L. Ed. 2d 427, 432 (1971).

While proper use of plea agreements is essential to the efficient administration of justice, improper use of the agreements threatens the liberty of the criminally accused as well as "the honor of the government" and "public confidence in the fair administration of justice." *State v. Kuchenreuther*, 218 N.W.2d 621, 624 (Iowa 1974). Violations of plea agreements "adversely impact the integrity of the prosecutorial office and the entire judicial system." *State v. King*, 576 N.W.2d 369, 370 (Iowa 1998). Further, " '[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance.' " *Horness*, 600 N.W.2d at 298 (quoting *State ex rel. Brewer v. Starcher*, 465 S.E.2d 185, 192 (W. Va. 1995)). For all those reasons, " 'violations of either the terms or the spirit of the agreement' require

reversal of the conviction or vacation of the sentence." *Id.* (quoting *Stubbs v. State*, 972 P.2d 843, 844 (Nev. 1998)).

In this case, the prosecutor initially breached the plea agreement as the result of confusion or perhaps inattention. A prosecutor must take care to properly carry out all obligations and promises of the state in good faith. This duty requires each prosecutor who enters a courtroom on behalf of the state in every case to understand the state's obligations under a plea bargain and to strictly comply with those obligations. "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." *Santobello*, 404 U.S. at 262, 92 S. Ct. at 499, 30 L. Ed. 2d at 433. The prosecutor is not merely the representative of an ordinary party in a private controversy, "but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *United States v. Shanahan*, 574 F.2d 1228, 1231 (5th Cir. 1978) (describing the role of the United States Attorney). As such, "our time-honored fair play norm and accepted professional standards" require strict compliance. *Kuchenreuther*, 218 N.W.2d at 624. Thus, inadvertence by a prosecutor will not excuse noncompliance.

A fundamental component of plea bargaining is the prosecutor's obligation to comply with a promise to make a sentencing recommendation by doing more than "simply inform[ing] the court of the promise the State has made to the defendant with respect to sentencing." *Horness*, 600 N.W.2d at 299. The State must actually fulfill the promise. Where the State has promised to "recommend" a particular sentence, we have looked to the common definition of the word "recommend" and required

> the prosecutor to present the recommended sentence[] with his or her approval, to commend the sentence[] to the court, and to otherwise indicate to the court that the recommended sentence[] [is] supported by the State and worthy of the court's acceptance.

*Id.* (citing *Webster's Third New International Dictionary* 1897 (unabr. ed. 1993) (defining "recommend" to mean (1) "to mention or introduce as being worthy of acceptance, use, or trial," (2) "to make a commendatory statement about as being fit or worthy," (3) "to bring forward as being fit or worthy," (4) "present with approval," (5) "indicate as being one's choice for something or as otherwise having one's approval or support," (6) "offer or suggest as favored by oneself")); s*ee also United States v. Brown*, 500 F.2d 375, 377 (4th Cir. 1974) (requiring the prosecutor's recommendation be "expressed with some degree of advocacy").

The record in this case not only demonstrates noncompliance with the express terms of the plea agreement, but also with the spirit of the plea agreement. Despite the prosecutor's initial confusion about the terms of the plea agreement, the applicable plea agreement clearly required the State to recommend against incarceration. Yet, even after the initial confusion was resolved and the prosecutor understood the terms of the agreement, he failed to comply with the obligation of the State to recommend that Bearse not be incarcerated. Instead, he merely indicated the State would "abide by the agreement," but only after first telling the court it was "not bound by the plea agreement," followed by a reminder that the court had "the presentence investigation report." We have said "[t]he State's promise to make a sentencing recommendation . . . [carries] with it the implicit obligation to refrain from suggesting more severe sentencing alternatives." *Horness*, 600 N.W.2d at 299 (recognizing the plea agreement "is of little value to the defendant" if the State is allowed to recommend alternative sentences); *see also State v. Birge*, 638

N.W.2d 529, 536 (Neb. 2002) (finding breach of a plea agreement cannot be cured by prosecutor's offer to withdraw improper remarks, even in case where district court affirmatively stated it was not influenced by the improper comments). Not only did the State in this case mistakenly recommend incarceration at the outset, but it clearly suggested incarceration should be imposed by referring to the presentence investigation report (which recommended incarceration) and reminding the court that it was not bound by the plea agreement. The State clearly breached the plea agreement by suggesting more severe punishment than it was obligated to recommend.

The argument by the State that it ultimately complied with the plea agreement ignores our previous jurisprudence requiring the prosecutor to do more than merely inform the court of the promise made by the State. *Horness*, 600 N.W.2d at 299. The agreement in this case required a *recommendation* against incarceration. The State's initial recommendation of incarceration and subsequent agreement to "abide by the plea agreement" do not amount to a recommendation against incarceration. The prosecutor did not present the recommended sentence with his approval or commend a sentence to the court other than incarceration, such as probation. Consequently, the State failed to fulfill the promise under the plea agreement to recommend against incarceration.

Having found a breach of the plea agreement, we must next consider whether defense counsel failed to perform an essential duty by failing to object to the breach. We have previously held defense counsel has a duty to object to the breach of a plea agreement:

> When the State breached the plea agreement, the defendant's trial counsel clearly had a duty to object; only by objecting could counsel ensure that the defendant received

the benefit of the agreement. Moreover, no possible advantage could flow to the defendant from counsel's failure to point out the State's noncompliance. Defense counsel's failure in this regard simply cannot be attributed to improvident trial strategy or misguided tactics.

*Id.* at 300 (citations omitted). As such, defense counsel failed to perform an essential duty.

4. *Prejudice.* The ineffective-assistance-of-counsel claim by Bearse also requires that he demonstrate prejudice. In determining prejudice, we have rejected the standard that, "but for his counsel's failure to object, he would have received a different sentence." *Id.* (citing *State v. Carrillo*, 597 N.W.2d 497, 500 (Iowa 1999)). Instead, "the defendant must simply show that the outcome of the [sentencing] proceeding would have been different." *Id.* at 300–01 (citing *Carrillo*, 597 N.W.2d at 500). In *Horness*, we said:

> The proper objection by the defendant's attorney would have alerted the sentencing court to the prosecutor's breach of the plea agreement. In that circumstance, the court would have allowed the defendant to withdraw his guilty plea[], or would have scheduled a new sentencing hearing at which time the prosecutor could make the promised recommendations. The outcome of the defendant's sentencing proceeding was different, however, because defense counsel did not make the necessary objection. Consequently, the defendant was sentenced by the court at a hearing tainted by the prosecutor's improper comments.

*Id.* at 300 (citations omitted).

The State asserts that the absence of an objection in this case did not result in prejudice at sentencing because the sentencing judge knew the State was obligated to recommend against incarceration, and the tactics employed by the prosecutor to imply the State nevertheless actually wanted the court to impose a sentence of incarceration had no impact on the sentencing decision of the court. The State points out the sentencing judge enumerated the factors upon which the ten-year

indeterminate sentence was based, and the State's recommendation of incarceration was not one of those. In *Carrillo*, we noted that

> we have no way of knowing what sentence this judge would have imposed had the State [performed its obligation under the plea agreement], and we certainly will not speculate about the sentence a different judge would have imposed had [defendant's] counsel objected and the case been set for resentencing.

597 N.W.2d at 501. We likewise refuse to engage in such speculation in this case. *See Santobello*, 404 U.S. at 262–63, 92 S. Ct. at 499, 30 L. Ed. 2d at 433 (finding error and remanding even though sentencing court stated it would have given the same sentence had prosecutor fulfilled plea bargain); *Birge*, 638 N.W.2d at 536 (same). Moreover, the ability of the sentencing court to stand above the fray and overlook the conduct of the prosecutor cannot be used by the State to minimize the prejudice component of the analysis. Our system of justice requires more and does not allow prosecutors to make sentencing recommendations with a wink and a nod. The concept of justice has a far greater meaning.

Additionally, as in *Horness*, an objection by defense counsel leads to a procedure that alerts the court to correct the taint by allowing the defendant to withdraw the plea or by scheduling a new sentencing hearing with a prosecutor who will make the promised recommendation. 600 N.W.2d at 301. Thus, the outcome of the sentencing proceeding in this case would have been different if defense counsel would have objected. The sentencing hearing would have been rescheduled, or the plea of guilty would have been withdrawn. Consequently, Bearse has shown his counsel was ineffective.

5. *Remedy.* Having determined counsel was ineffective, we must decide what remedy is appropriate. Bearse asks us to vacate the

conviction and allow him to plead anew. When the district court erroneously fails to remedy a prosecutor's breach of the plea agreement, we will "determine the appropriate remedy necessary to ensure the interests of justice are served—either withdrawal of the guilty plea or resentencing before another judge." *See King,* 576 N.W.2d at 371 (determining defendant was entitled to specific enforcement of the bargained-for plea agreement and remanding for resentencing). The interests of justice are adequately served in this case by remanding for resentencing. Bearse can still receive the benefit of his bargain under the plea agreement if the State carries out its obligation at resentencing. Consequently, there is no need to expend the added prosecutorial and judicial resources that would be required by vacating the conviction and allowing the process to start anew. Therefore, we affirm the conviction, but vacate the decision of the court of appeals, vacate Bearse's sentence, and remand the case for resentencing.

**B. Special Life Sentence.** Iowa Code section 903B.1 requires that a person convicted of an offense under chapter 709

> shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906.

This provision essentially requires sex-abuse offenders to remain on parole or probation for life. The word "shall" in the statute indicates the legislature intended the special life sentence to be mandatory. *See* Iowa Code § 4.1(36)(*a*) (requiring that unless otherwise specifically provided by the legislature, "[t]he word 'shall' imposes a duty"); *State v. Tenny,* 493 N.W.2d 824, 826 (Iowa 1992) (stating " 'shall' indicates mandatory intent unless the context indicates otherwise").

Bearse argues the district court failed to advise him of the special life sentence prior to accepting his plea of guilty, which rendered his guilty plea involuntary and unintelligent. In order to challenge a guilty-plea proceeding on appeal, a defendant must file a motion in arrest of judgment. Iowa R. Crim. P. 2.24(3)(a); *State v. Kress*, 636 N.W.2d 12, 19 (Iowa 2001). Counsel for Bearse failed to file the required motion. "However, this failure does not bar a challenge to a guilty plea if the failure to file a motion in arrest of judgment resulted from ineffective assistance of counsel." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *State v. Brooks*, 555 N.W.2d 446, 448 (Iowa 1996)).

The State argues defense counsel could not have been ineffective for failing to raise the special life sentence by filing a motion in arrest of judgment because Bearse was not sentenced under the special provision. Yet, on remand, Bearse will face resentencing under all applicable provisions, and he will be subject to the special sentencing provision. Thus, even if Bearse failed to preserve his claim by filing a motion in arrest of judgment, we can consider whether the failure to file a motion in arrest of judgment resulted from ineffective assistance of counsel.

In considering a claim of ineffective assistance of counsel on direct appeal, Iowa Code section 814.7(3) allows us to evaluate the record surrounding an ineffective-assistance-of-counsel claim and choose whether we will decide the claim on direct appeal or preserve it for postconviction proceedings. As mentioned earlier, we apply the well-settled, two-prong test to analyze Bearse's ineffective-assistance-of-counsel claim. Bearse "must demonstrate (1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.*

Even assuming defense counsel failed to perform an essential duty by failing to file a motion in arrest of judgment, Bearse cannot meet his

burden to prove he was prejudiced by the failure on this record. As we clarified in *Straw*, a defendant who relies on an ineffective-assistance-of-counsel claim to challenge the adequacy of a guilty plea has the burden to prove "there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial."[2] *Id.* at 138. In *Straw*, we explained:

> Under the "reasonable probability" standard, it is abundantly clear that most claims of ineffective assistance of counsel in the context of a guilty plea will require a record more substantial than the one now before us. . . . [T]here is nothing in this record to indicate whether or not Straw's trial counsel told him about the possibility of consecutive sentences. Such evidence could be a significant part of our prejudice analysis. This case exemplifies why claims of ineffective assistance of counsel should normally be raised through an application for postconviction relief. In only rare cases will the defendant be able to muster enough evidence to prove prejudice without a postconviction relief hearing.

*Id.* As in *Straw*, the record before us on this direct appeal is devoid of evidence indicating Bearse would not have pleaded guilty, but would have insisted on going to trial. In the absence of such evidence, we must preserve the claim for postconviction proceedings. To do otherwise, would be to adopt a per se rule of prejudice and shift the burden to the State. *See id.* at 137 (refusing to adopt a per se rule of prejudice). We refused to do so in *Straw*, and we again refuse to do so here. This record makes it impossible for Bearse to muster sufficient evidence to satisfy his burden of demonstrating prejudice. His claim should be preserved for postconviction proceedings.

---

[2]In *Straw*, the defendant appealed from judgments and sentences entered following guilty pleas. *Id.* at 130. As in this case, the defendant complained that "his counsel rendered ineffective assistance by failing to file a motion in arrest of judgment after the district court did not inform him of the maximum punishment he could face by pleading guilty." *Id.*

**IV. Conclusion.**

We vacate the decision of the court of appeals and sentence of the district court and remand for resentencing before a new district court judge.

**DECISION OF COURT OF APPEALS VACATED; SENTENCE VACATED; CASE REMANDED.**

All justices concur except Wiggins, J., who concurs in part and dissents in part.