# IN THE COURT OF APPEALS OF IOWA

No. 17-0532
Filed April 4, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**MASON DAVIS VANG,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Mason Vang appeals after pleading guilty to assault with intent to commit sexual abuse. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge.**

Mason Vang appeals after pleading guilty to assault with intent to commit sexual abuse. *See* Iowa Code § 709.11(3) (2015). On appeal, he asserts the plea court failed to substantially comply with the Iowa Rule of Criminal Procedure 2.8(2)(b)(4) colloquy requirements regarding his right to confrontation. We find the plea court substantially complied with the rule. Vang also asserts his trial counsel was ineffective in failing to object to the prosecutor's alleged breach of the plea agreement. We find the prosecutor did not breach the plea agreement, and therefore Vang's counsel had no duty to object. We affirm the district court.

**I. Plea Colloquy.**

Vang claims the plea court's rule 2.8(2)(b) colloquy was deficient. Relevant to this appeal, the rule provides that, unless the procedure is waived under certain circumstances, before accepting a guilty plea, the court must address the defendant personally in open court and inform the defendant that the defendant has the right to be tried by a jury and has the right to confront and cross-examine witnesses against the defendant. Iowa R. Crim. P. 2.8(2)(b). "We review challenges to plea proceedings for correction of errors at law." *State v. Weitzel*, 905 N.W.2d 397, 401 (Iowa 2017).

During the plea colloquy, the plea court addressed Vang's constitutional rights to a jury trial and explained to him, "At the trial, your lawyer could cross-examine anyone who accuses you. If you wanted witnesses to come to the trial to testify and they would not do so voluntarily, the court would use its power to bring them to the courtroom to testify." Vang indicated he understood.

On appeal, Vang acknowledges the court advised him of his right to cross-examine witnesses against him and of the compulsory process but argues the court failed to advise him of his right to confront witnesses against him. The crux of Vang's argument is that the right of confrontation and the right to cross-examine are not the same thing—the right to confrontation is more expansive than the right to cross-examine. Although the right to confrontation includes the right to effective cross-examination, Vang notes the right to confrontation also encompasses the right to testimony under oath and the right to have a jury observe a witness's demeanor. *See State v. Shearon*, 660 N.W.2d 52, 55 (Iowa 2003) ("Three main rights may be claimed under the Confrontation Clause: (1) testimony under oath, (2) cross-examination by his counsel, and (3) the right to have the jury observe the witness's demeanor."); *see also State v. Newell*, 710 N.W.2d 6, 24 (Iowa 2006) ("Two important policies underlie the Confrontation Clause: 'a preference for face-to-face confrontation at trial and the right of cross-examination.'" (citation omitted)).

We believe testimony under oath and observation of a witness's demeanor by a jury are implicit in cross-examination by defense counsel at a jury trial, but even if they are not, we conclude there was no violation of rule 2.8(2)(b)(4). Although strict or actual compliance with the rule is preferred, substantial compliance is acceptable. *See Weitzel*, 905 N.W.2d at 406. So, we ask whether the record establishes the plea court conveyed the required information to Vang such that it could be said he understood the information. *See State v. Meron*, 675 N.W.2d 537, 544 (Iowa 2004) ("Substantial compliance requires that the essence of each requirement of the rule be expressed to allow the court to perform its important role in each case."). Although the plea court's statement does not parrot

the rule 2.8(2)(b)(4) requirement that a defendant be informed of "the right to confront," the court's advisory substantially complies with the rule. *See State v. Myers*, 653 N.W.2d 574, 578 (Iowa 2002) ("Under the substantial-compliance standard, a trial court is not required to advise a defendant of his rights using the precise language of the rule; it is sufficient that the defendant be informed of his rights in such a way that he is made aware of them."); *see, e.g.*, *State v. Aherns*, No. 13-1026, 2016 WL 351235, at *3 (Iowa Ct. App. Jan. 27, 2016) (holding that telling a defendant he "could cross-examine the State's witness" met the substantial compliance standard concerning rights to cross-examine and confrontation); *State v. Taylor*, No. 14-1688, 2015 WL 2089711, at *1 (Iowa Ct. App. May 6, 2015) (finding statement that "I have a right to hear the evidence against me from the witnesses and subject them to cross-examination" substantially complied with the rule regarding the right to confront and cross-examine witnesses); *State v. Hayes*, No. 04-0043, 2004 WL 2002596, at *5 (Iowa Ct. App. Sept. 9, 2004) (holding statement that the defendant was giving up his "right to have the opportunity to ask questions of the State's witnesses" sufficiently informed the defendant of his right to confront witnesses against him and, thus, substantially complied with the rule's requirement).

We conclude the plea court sufficiently informed Vang of his right to confront witnesses against him.

## II. Ineffective Assistance of Counsel.

Vang also contends his counsel provided constitutionally deficient representation in failing to object to the alleged breach of the plea agreement by the prosecutor. We review ineffective-assistance-of-counsel claims de novo.

*State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017). To establish his counsel provided ineffective assistance, Vang must establish his counsel failed to perform an essential duty and this failure resulted in prejudice. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). If the State breaches the plea agreement, defense counsel breaches an essential duty by failing to object to the breach or otherwise take remedial action. *See State v. Bearse*, 748 N.W.2d 211, 217 (Iowa 2008). Prejudice is presumed under the circumstances because had counsel objected, the defendant would have been entitled to withdraw the guilty plea or be resentenced in an untainted proceeding. *See State v. Frencher*, 873 N.W.2d 281, 284 (Iowa Ct. App. 2015).

When the State enters into a plea agreement, the prosecutor must comply with both the letter and spirit of the plea agreement. *See State v. Horness*, 600 N.W.2d 294, 296 (Iowa 1999). When the State has promised to recommend a sentence, we have required "the prosecutor to present the recommended sentence[ ] with his or her approval, to commend the sentence[ ] to the court, and to otherwise indicate to the court that the recommended sentence[ is] supported by the State and worthy of the court's acceptance." *Bearse*, 748 N.W.2d at 216 (alterations in original) (citations omitted). The ultimate inquiry in determining whether the prosecutor complied with the letter and spirit of the plea agreement "is whether the prosecutor acted contrary to the common purpose of the plea agreement and the justified expectations of the defendant and thereby effectively deprived the defendant of the benefit of the bargain." *Frencher*, 873 N.W.2d at 284. The prosecutor can act contrary to the plea agreement and deprive the defendant of the benefit of the plea bargain implicitly. *See id.* at 285. Typically,

implicit action contrary to the plea agreement involves the prosecutor's expression of material reservation regarding the plea agreement while still in technical compliance with the plea agreement. *See id.* The prosecutor could do this in a number of ways. For example, the prosecutor could propose alternative sentences, request an "an appropriate sentence" rather than the agreed-upon sentence, remind the court it is not bound by the plea agreement, or emphasize a more severe punishment recommended by the presentence investigation author. *See id.*

At the plea hearing, the prosecutor stated the plea agreement as follows:

> The plea agreement is that I'm going to reduce this from a Class "C" felony to an aggravated misdemeanor. At the time of sentencing, I'm going to recommend probation for this defendant, a suspended sentence. I'm going to ask that this probation run consecutive to the probation he's currently on.
> I told the defendant and his defense counsel that there will be a victim impact statement from the family that's involved, the victim and her parents. They may ask the court for incarceration. The defendant knows that you're the final arbiter of his sentence.
> There will be, regardless of what the punishment is, other ramifications: The lifetime registration with the Sex Offender Registry, a special sentence. I'm not going to ask for a fine. He needs to make payments on court costs, probation fees, restitution. And paramount is a no-contact order with the victim and her family.

Vang and his counsel acknowledged this was the plea agreement.

At the sentencing hearing, the victim read her victim impact statement and her mother also gave a statement. Vang's allocution followed, and then the court asked for the State recommendation for sentencing. The prosecutor responded:

> Thank you, Judge. You know, by case law, I'm not allowed to, in a jury trial, talk about emotion or show emotion, but this was an excellent victim impact statement, Judge. It encapsulates everything about this crime and about how whenever we look at a sexual assault case, there's a real person who has benefited and also been hurt by the crime, and that's . . . the very young girl in this case. And over

the course of the time that I have known her she's grown up because of this crime.

The defendant, when you read his PSI, has had in the past a life that is out of control, reckless, no supervision. I'm not sure where he lived during the period of time that he was involved in Polk County in crime, but he was unsupervised and out of control. And his behavior impacted other people. He committed a crime against this victim, which maybe now in hindsight was really—well, there's no explanation for it. You can't get somebody drunk and then sexually assault them. You just can't. And you learn that from a very early age, so it's not about mistakes of youth.

But I do think because of his youth and the fact that he has had no supervision, no parents that have paid attention to him and that he was allowed to just wander recklessly, that that should be taken into account. I told [defense counsel] at the start of these plea negotiations, and I will continue to say it today, he's a person who should be on probation but not get a deferred. There are ramifications for this kind of behavior. He should be on probation to be afforded all the opportunities that he could have for mental health care, job development, education, pay restitution, and benefit from the services that are available through sex offender treatment for a person who needs to wise up and learn about the consequences.

I do not think that the law about deferred judgments was ever written for this kind of behavior. I just can't imagine that the legislature anticipated that this kind of behavior should ultimately be washed away. He will be on the sex offender registry by virtue of the crime he pled guilty to for life, and that is a suitable albatross, but it is one that he has earned.

However, I think that the consequences of his behavior require not a prison sentence where he could just sit like a lump in the penitentiary. I think he needs to be in a community-based setting where someone monitors him and makes him do things, school, work, go to counseling, which is not available until the very ending of a penitentiary stay.

So it's the State's position that he should have a probation and that it should run consecutive to a probation he's currently serving out of Polk County in, I believe, Hamilton County where he resides.

The court then discussed with the prosecutor issues concerning victim restitution, fines and surcharges, and DNA sampling. The prosecutor noted all penalty options were open to the judge but concluded, "You should just know I'm not asking for prison, but I'm not agreeing to a deferred either."

Vang's counsel agreed with the prosecutor that the victim's statement was "probably today the best and most poignant victim impact statement that I have ever heard in a criminal case. Certainly this young lady is very well-educated, very well-spoken, and has a very strong voice. There is no question about that." Counsel followed with an impassioned argument for a deferred judgment.

The court acknowledged defense counsel's "good arguments" but disagreed that a deferred judgment was appropriate. The court detailed its response to the victim impact statement and counsels' arguments. In the end, the court sentenced Vang to 364 days in jail.

On appeal, Vang accuses the prosecutor of failing to comply with the spirit of the plea agreement. He specifically argues, "While paying lip service to the plea agreement, the prosecutor also emphasized the victim impact statement, which requested a year of incarceration, and argued to the court how horrible was Vang's PSI and that he was out of control and reckless."

Vang's extrapolation of the victim impact statement is mistaken. Although the victim stated her life had been put "on hold over a year," that Vang did not deserve "a mitigating sentence," and that she hoped that Vang's "life can be on hold for some time too," we do not read the statement as a request for a year of incarceration. The prosecutor's remarks that the victim's impact statement was "excellent," merely expressed an observation patently obvious to anyone in the court room—and to anyone reading the transcript.

The prosecutor's commentary that the presentence investigation (PSI) report indicated that in the past Vang had a life "out of control, reckless, [and] no supervision" may be a bit of a stretch, but Vang's counsel fully responded to the

comment and the sentencing court put no stock in it. The court stated, "I do not agree at all with the proposition that this incident occurred simply because you were unsupervised, you were uncontrolled, and somehow your parents failed you." The PSI does indicate that Vang was serving a two-year deferred judgment probation for assault and harassment at the time.

We disagree with Vang's characterization of the prosecutor's remarks. As we read them, the prosecutor was making a reasoned and forceful argument against a deferred judgment, not for incarceration. She did not cross the line to undermine the plea agreement.

On de novo review, we disagree with the contention that the prosecutor breached the plea agreement. Vang's counsel had no duty to object to the prosecutor's statements because no breach of the plea agreement occurred. *See Frencher*, 873 N.W.2d at 286. Accordingly, Vang has failed to establish his claim that counsel provided constitutionally deficient representation. *See id.*

We affirm Vang's conviction and sentence.

**AFFIRMED.**