**IN THE COURT OF APPEALS OF IOWA**

No. 13-1484
Filed September 17, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**RYAN WAYNE LARUE,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Muscatine County, Mark D. Cleve

(guilty plea) and Thomas G. Reidel (motion in arrest of judgment), Judges.


      Ryan Larue appeals his judgment and sentence for domestic abuse

assault and driving while barred.  **AFFIRMED.**



      Shawn C. McCullough of The Law Office of Jeffrey L. Powell, Washington,

for appellant.

      Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney

General, and Alan Ostergren, County Attorney, for appellee.


      Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Ryan Larue appeals from the judgment and sentence entered following his guilty plea to domestic abuse assault and driving while barred, contending his plea counsel was ineffective and the district court erred in denying his motion for judgment of acquittal in light of counsel's ineffective assistance. We affirm.

## I.    *Background Facts and Proceedings*

At 7:21 a.m. on April 10, 2013, Muscatine police officers were dispatched to a gas station regarding a domestic assault in progress. The officers were advised a male (later identified as Larue) had stopped his vehicle and aggressively taken a young child out of the arms of a woman (later identified as Nikia Lanfier). When the officers arrived at the gas station, Lanfier and the child were inside with two women, Kathleen Jenkins and Maggie Curry, who had witnessed the incident. The officers noticed Lanfier was upset and had obvious bruising on her left eye and her arms. Lanfier stated Larue had assaulted her throughout the previous night, and had also trashed their apartment. Jenkins and Curry confirmed they had witnessed Larue take the child out of Lanfier's arms.

At the police station, Lanfier provided a written statement and photographs were taken of her injuries. Lanfier told officers Larue had accused her of cheating on him and proceeded to hit, push, and choke her before slamming her head against the wall. She stated that she attempted to leave several times, but Larue physically prevented her from doing so and threatened her life. Lanfier stated at one point Larue held a large kitchen knife and stated, "I should just . . . kill you right now."

The next morning, Larue continued to be verbally abusive, but left to go to work. Lanfier then left with their child and began walking toward the child's daycare provider. As she was walking, Larue pulled up to her in his vehicle and then tried to grab her and the child, ordering them into the car. After a short struggle, Larue was able to get the child out of Lanfier's arms. At this point, Lanfier ran to the gas station and witnesses Jenkins and Curry called 911. Before officers arrived, Larue entered the gas station and confronted Lanfier again and then left the scene.

Larue was located and taken into custody for questioning at the Public Safety Building. He was argumentative and verbally abusive toward officers. The interview was terminated. He was handcuffed, and with some difficulty, was placed in the back seat of a squad car to be transported to jail. Larue kicked the back passenger window with such force that it came out its tracks. He was then placed in ankle chains, secured to the cage in the squad car, and transported to jail. Officers were forced to restrain him to a chair at the jail due to his anger and combativeness.

The State filed a trial information charging Larue with domestic abuse assault, false imprisonment, child endangerment, driving while revoked, and driving while barred. Larue initially pled not guilty. Pursuant to a plea agreement, Larue later entered a guilty plea to the charges of domestic abuse assault, in violation of Iowa Code section 708.2A(5) (2013), a class "D" felony, and driving while barred, in violation of sections 321.560 and 321.561, an

aggravated misdemeanor. A plea hearing was held on the domestic abuse charge.[1]

Larue subsequently filed a motion to withdraw his guilty plea; claiming ineffective assistance of counsel prevented his plea from being knowing and voluntary. Hearing on the motion, treated as a motion in arrest of judgment, was combined with the sentencing hearing.

At the hearing Larue, appearing with new counsel, requested a continuance so that Lanfier could be subpoenaed to testify. In support of his motion to continue, Larue presented an affidavit. The affidavit contained the transcription of a voice mail message received by Larue's lawyer's office seven days prior to the hearing. The message was from a person—identifying herself as Lanfier—stating Larue "did not choke me."[2] The district court denied Larue's motion to continue, stating seven days was sufficient time to subpoena Lanfier. The court accepted into evidence the affidavit giving it "the weight that it's due."[3]

Following the hearing, the court denied Larue's motion in arrest of judgment, and sentenced him to a term of imprisonment not to exceed five years for the domestic abuse assault conviction and a term of imprisonment not to exceed two years for the driving while barred conviction, to run concurrently. Larue now appeals.

---

[1] Larue entered a written plea on the driving while barred charge.

[2] The message was not authenticated by Lanfier.

[3] In a follow-up written order denying the motion for continuance, the court stated it gave the same weight to the affidavit concerning Lanfier's statement as the court would have given if Lanfier had testified to the same information in court. The court aptly noted, "The weight given to any recanting witness in the area of domestic abuse must also be balanced against known research articles indicating a propensity for victims to falsely recant for many reasons." Regarding this point, we find illuminating the caller's statement, "I don't think he should get as much time as he is looking at."

## II.    Scope and Standard of Review

Although a defendant's guilty plea waives all defenses and objections which are not intrinsic to the plea, a defendant can challenge the validity of his guilty plea by proving counsel's failure to perform pre-plea tasks rendered the plea involuntary or unknowingly.  *See State v. Carroll*, 767 N.W.2d 638, 641-42 (Iowa 2009).  Here, Larue claims the district court erred in denying his motion in arrest of judgment because counsel's alleged ineffectiveness (in failing to request depositions or interview witnesses and in pressuring him to accept a plea offer) prevented his plea from being knowing and voluntary.[4]  He also challenges the knowing and voluntary nature of his guilty plea.  Because these claims are premised on counsel's alleged ineffectiveness, our review is de novo.  *See State v. Gines*, 844 N.W.2d 437, 440 (Iowa 2014).

## III.    Analysis

To prevail on a claim of ineffective assistance of counsel, Larue must show (1) a deficiency in counsel's performance, and (2) that the deficient performance prejudiced his defense.  *State v. Ross*, 845 N.W.2d 692, 697-98 (Iowa 2014) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)).  Larue must prove both the "essential duty" and "prejudice" prongs by a preponderance of the evidence.  *See id.*  "There is a presumption the attorney acted competently, and prejudice will not be found unless there is a reasonable

---

[4] We observe Larue has not cited any authority to support his claim regarding the court's denial of his motion in arrest of judgment.  "When a party, in an appellate brief, fails to state, argue, or cite to authority in support of an issue, the issue may be deemed waived." *State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. 2001).  Although a party's failure in a brief to cite authority in support of an issue may be deemed waiver of that issue, *see* Iowa R. App. P. 6.903(2)(g)(3), we elect to address it in conjunction with Larue's claims of ineffective assistance relating to the voluntariness of his plea.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012) (internal quotation marks omitted).

The voluntariness of Larue's plea is largely tied to the prejudice element of his ineffective assistance claims, and Larue must demonstrate counsel's deficient performance was prejudicial to the extent that it prevented his plea from being knowingly and voluntarily entered. *See Carroll*, 767 N.W.2d at 644. Specifically, to demonstrate prejudice in the context of this case, Larue "must show that there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (interpreting the *Strickland* test as applied to challenges to guilty pleas).

"Although claims of ineffective assistance of counsel are generally preserved for postconviction relief proceedings, we will consider such claims on direct appeal where the record is adequate." *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). Neither party suggests we preserve Larue's claims for a postconviction proceeding and we find the record adequate to address the issues on direct appeal.

Larue contends his counsel was ineffective in failing to request depositions or interview witnesses, and in pressuring him to accept a plea offer and that the district court erred in denying his motion in arrest of judgment in light of counsel's ineffective assistance. Larue testified his original attorney had tried to "prosecute" him. Larue stated his attorney did not request depositions or

medical reports, which according to Larue, would have disproved the claim that he hurt Lanfier.

Specifically, Larue testified that prior to entering his plea he had requested his attorney take depositions of the State's witnesses, but his attorney "said it was too late." Larue also stated he asked his attorney to contact his mother as a potential defense witness because "she was there" at the time of the alleged assault and "she seen it all happen," but his attorney "never made an effort [to] contact her" despite the fact that she "left thousands and thousands of messages."

In regard to his decision to plead guilty, Larue testified he asked his attorney for a jury trial, but his attorney told him "it wouldn't be worth going to because I was looking at, like, ten years altogether and they would slam me if I went and tried to fight it." Larue stated even though he felt there was "no evidence of—of the felony domestic whatsoever," he was "basically scared into taking" the guilty plea by his attorney. There are serious weaknesses in Larue's claims regarding counsel's alleged deficiencies on these grounds.

We take note of the following portions of colloquy from Larue's plea hearing:

> COURT: All right. And do you understand that you have a right to a jury trial? DEFENDANT: Yes.
> COURT: Do you understand that if you plead not guilty, and if you cannot afford to hire a lawyer, one would be appointed to represent you at the expense of the State of Iowa? DEFENDANT: Yes.
> . . . .
> COURT: Do you understand that at your trial the State would have to make you aware of the witnesses they would intend to call to convict you, and that you would have the right, through your lawyer, to cross-examine those witnesses? DEFENDANT: Yes.

> COURT: Do you understand that you also have the right before trial to have your lawyer question the State's witnesses under oath to find out what they would say at trial? DEFENDANT: Yes.
>
> COURT: Do you understand that you have the right to subpoena witnesses, which means that you could compel any such witnesses to appear and testify on your behalf at trial? DEFENDANT: Yes.
>
> . . . .
>
> COURT: Are you satisfied with the advice of counsel and counsel that Mr. Dircks has given to you in this case? DEFENDANT: Yes.

The court also asked Larue whether "anyone promised [him] anything to make [him] plead guilty," to which Larue responded, "No." The court then directed Larue's attorney to establish the factual basis for Larue's plea, which he did. We observe the record establishes the court's substantial compliance with Iowa Rule of Criminal Procedure 2.8(2)(b) prior to acceptance of Larue's plea.

Larue was facing criminal charges on five offenses—domestic abuse assault, child endangerment, false imprisonment, driving while revoked, and driving while barred—of which the minutes of testimony provided sufficient evidence for a jury to find him guilty. He was aware of the evidence against him and the possibility of serving "ten years altogether." Larue realized the plea agreement would result in the State dismissing three of his charges. Larue was aware of his right to compel witnesses to testify on his behalf. He was also aware of his right to depose and cross-examine the State's witnesses. Larue stated he was satisfied with the advice of his counsel, and that he had not been persuaded to plead guilty. *See State v. Myers*, 653 N.W.2d 574, 578-79 (Iowa 2002) ("[The defendant's] conclusory claim of prejudice, that she 'was ready to insist on going to trial,' is not a sufficient assertion of prejudice. She must show a

reasonable probability that, but for counsel's error, she would not have entered the plea of guilty.").

Furthermore, other than his mother and Lanfier, Larue does not even hint at what "potential witnesses" he claims his counsel should have contacted or deposed, or what they would have testified to, or how it would have supported his defense, or how it would have changed the outcome. And in regard to his mother, Larue does not allege with any specificity what her testimony would have been, how it would have supported his defense, or how it would have changed the result of a trial. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (stating the defendant must state specific ways in which counsel's performance was inadequate and how competent representation probably would have changed the outcome); *Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981) (noting complaints about the failure to call witnesses should be accompanied by a showing their testimony would have been beneficial).

In regard to Lanfier, Larue asserts her testimony "would have demonstrated that [Larue] never impeded or obstructed [her] breathing or circulation on blood flow," thus disabling the State from proving the necessary elements of the domestic abuse charge.[5] We disagree. Larue's assertion is founded solely upon the unauthenticated telephone message left at the office of Larue's new counsel some two months after the guilty plea hearing and a week before the sentencing hearing, wherein the caller, who identifies herself as

---

[5] Iowa Code section 708.2A(5) requires the domestic abuse assault be "committed by knowingly impeding the normal breathing or circulation of the blood of another by applying pressure to the throat or neck of the other person or by obstructing the nose or mouth of the other person, causing bodily injury."

Lanfier, states: "[H]e did not choke me." The statement is contrary to the statement Lanfier gave at the scene to police officers that Larue "choked her." The statement is contrary to Lanfier's written statement to police officers that Larue "choked me." The statement is contrary to Larue's own admissions made to the court. At the guilty plea hearing, the following colloquy occurred:

> COURT: And on that particular date, did some physical abuse occur? DEFENDANT: Yes.
> COURT: And did it also include your placing your hands on or near her throat which would cause an obstruction of air to her? DEFENDANT: Yes.
> COURT: And do you believe that she was in pain at any point in this? DEFENDANT: Yes.

Furthermore, Larue agreed the minutes of testimony, which included the police arrest report and Lanfier's written statement, were "accurate and complete as they relate to [Larue's] involvement." Under these circumstances we cannot conclude, as Larue asserts on appeal, that had original defense counsel deposed Lanfier, "she would have testified that [Larue] was innocent of the alleged count of domestic abuse by choking."

Considering the facts and circumstances of this case, we conclude Larue has failed to prove a reasonable probability he would not have pleaded guilty and would have insisted on going to trial despite counsel's alleged deficiencies, and that his plea was not knowingly and voluntarily entered. We affirm Larue's judgment and sentence.

**AFFIRMED.**