STATE of Iowa, Appellee,

v.

**Robert HORNESS, Appellant.**

No. 98–981.

Supreme Court of Iowa.

Sept. 9, 1999.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, and Rick Dunn, County Attorney, for appellee.

Considered by LARSON, P.J., and CARTER, TERNUS, CADY, and HARRIS,* JJ.

TERNUS, Justice.

This case requires the court to decide the extent of the obligation assumed by the State when the prosecutor promises to make a certain sentencing recommendation as part of a plea agreement with the defendant. We hold that mere technical compliance is inadequate; the State must comply with the spirit of the agreement as well. Consequently, we vacate the contrary decision of the court of appeals, vacate the defendant's sentences, and remand for resentencing.

I. *Background Facts and Proceedings.*

The defendant, Robert Horness, was charged with three offenses: (1) operating a motor vehicle while intoxicated (OWI),

second offense, in violation of Iowa Code section 321J.2(1)(a), (b) (1997); (2) operating a motor vehicle while under suspension, in violation of Iowa Code section 321.218(1); and (3) child endangerment, in violation of Iowa Code section 726.6(1)(a). Horness and the State reached a plea agreement. The defendant pled guilty to OWI, second offense, and to child endangerment in exchange for the following concessions by the State, as set forth in the written plea agreement:

> The State will dismiss the Driving Under Suspension. The State will recommend 7 days in jail and a $1,500 fine on the OWI 2nd and 48 hours and a $500 fine on the Child Endangerment as well as surcharge, court costs and attorney fees.

This agreement was confirmed by the district court at the time the court accepted the defendant's guilty pleas.

Subsequently, the same district court judge presided at the defendant's sentencing hearing. The court asked the county attorney at that time what the State's recommendation was. The county attorney replied:

> Your Honor, the State had indicated to the Defendant's prior counsel that we would recommend, with a plea of guilty to the Child Endangerment, seven days, $750 fine—excuse me—
>
> On the OWI, 2nd charge, seven days in jail, $750; and a $500 fine, 48 hours in jail on the Child Endangerment charge.
>
> *However, we had an alternative recommendation,* if you go along with the recommendation of the PSI. The Defendant's understanding is set forth in her [sic] guilty plea; State dismissing the Driving Under Suspension charge, which we do at this time. The State will recommend seven days in jail and $1,500 on the OWI, 2nd; 48 hours and $500 fine. We believe that is correct.
>
> *We would note for the Court that the recommendation of the PSI is different*

* Retired justice serving as senior judge pursuant to Iowa Code section 602.9206 (1999).

*than that, based on the Defendant's long history with criminal offenses, but we do believe that we are abiding by our plea agreement.*

There was not any injury here. I think the facts speak for itself [sic]. *Driving drunk, you have kids in the car and they're not buckled up, that you are putting those children in danger, and fortunately there was not an accident. But the law is clear that if you drive drunk and you have kids in the car and you don't have them buckled up—apparently he was speeding in addition to drinking and driving—so he was a risk on the road and he was a risk to himself, to other drivers, and to these small, helpless children.*

*So we would ask the Court to issue the appropriate sentence.*

(Emphasis added.)[1] After this statement by the county attorney, the defendant's counsel expressed confusion as to the State's precise recommendation. The court then asked the county attorney, "What is the State's recommendation?" The county attorney replied:

Your Honor, the State has set forth its recommendation. . . .

The State set forth in a letter dated February 27th what the recommendation was. The recommendation of the State then noted what the Defendant's understanding was. The State will dismiss the Driving Under Suspension, which we did. The State will recommend seven days in jail and a $1,500 fine on the OWI, 2nd, and a $500 fine on the Child Endangerment, and that is what we have done. I think the State is well within its right for the—for the State to tell the Court to issue an appropriate sentence.

We have made our recommendation. The Court has the PSI. And the Defen-

dant will make a recommendation and the Court will issue an appropriate sentence. We do believe that we have complied with our plea agreement.

The court sentenced the defendant to concurrent, indeterminate terms of two years for each conviction. In addition, the defendant was fined and ordered to participate in a treatment program when space became available.

Horness appealed, claiming his trial counsel was ineffective in failing to object to the prosecutor's breach of the plea agreement. The appeal was transferred to the court of appeals. The court of appeals held the prosecutor's comments "did not directly violate the plea agreement, although [they] could be construed as being somewhat contrary to the spirit of the plea agreement . . . [and] are to be discouraged." Upon the defendant's application, this court granted further review.

II. *General Principles Governing Ineffective–Assistance–of–Counsel Claims.*

■ Because the defendant's trial counsel did not object to the prosecutor's comments at the sentencing hearing, error was not preserved. *See State v. Ceaser,* 585 N.W.2d 192, 195 (Iowa 1998). Consequently, to reach the merits of this issue on appeal, the defendant must establish that his trial counsel rendered ineffective assistance. *See State v. Carrillo,* 597 N.W.2d 497, 499 (Iowa 1999). We review this constitutional claim de novo. *See Ceaser,* 585 N.W.2d at 195.

■ Although claims of ineffective assistance of counsel are generally preserved for postconviction relief proceedings, we will consider such claims on direct appeal where the record is adequate. *See id.* The State suggests that this is not such a case, arguing that "the record is not en-

---

1. The presentence investigator recommended the defendant be given a prison sentence and participate in an OWI treatment program. By recommending a prison sentence, the presentence investigator effectively asked the court to sentence the defendant to at least a one-year term of incarceration. *See* Iowa Code § 903.4 (requiring any sentence over one year to be served in a state facility rather than the county jail).

tirely clear about defense counsel's beliefs about the plea agreement, nor is it clear what agreement was reached with previous defense counsel." The record is clear, however, as to the plea agreement reached with the defendant; that agreement was reduced to writing and its terms are not disputed. Therefore, we think the record before us is sufficient to address the defendant's claim that his counsel rendered ineffective assistance in failing to object to the county attorney's alleged breach of the plea agreement. Accordingly, we will address the defendant's ineffective-assistance-of-counsel claim in this appeal.

To prevail on a claim of ineffective assistance of counsel, the defendant must prove that his counsel failed to perform an essential duty and that the defendant suffered prejudice as a result of this failure. *See id.* We address each aspect of the defendant's claim separately.

### III. Did the Defendant's Trial Counsel Breach an Essential Duty?

In evaluating defense counsel's performance, we presume counsel is competent. *See State v. McPhillips,* 580 N.W.2d 748, 754 (Iowa 1998). To overcome this presumption, the defendant must prove that counsel's performance fell below the normal range of competency. *See Ceaser,* 585 N.W.2d at 195. Our task, then, is to determine whether Horness has demonstrated that a reasonably competent attorney would have objected to the prosecutor's statements as a breach of the negotiated plea agreement. We have stated on previous occasions that defense counsel has not failed to perform an essential duty when counsel fails to raise a claim or make an objection that has no merit. *See id.; McPhillips,* 580 N.W.2d at 754. Accordingly, the defendant's counsel here cannot be faulted for failing to object to the prosecutor's statements as being a breach of the plea agreement if, in fact, they were not contrary to the State's agreement. Therefore, we first consider whether the State breached the plea agreement.

A. *Did the county attorney's comments constitute a breach of the State's plea agreement with the defendant?* It is well established that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration [for the plea], such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971); *accord State v. Kuchenreuther,* 218 N.W.2d 621, 624 (Iowa 1974). *See generally* ABA Standards for Criminal Justice 3–4.2(c) (2d ed.1980) (stating "[i]t is unprofessional conduct for a prosecutor to fail to comply with a plea agreement"). As our court has observed, "[t]here is more at stake than just the liberty of [the] defendant. At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice...." *Kuchenreuther,* 218 N.W.2d at 624 (quoting *United States v. Carter,* 454 F.2d 426, 428 (4th Cir.1972)); *accord State v. King,* 576 N.W.2d 369, 370 (Iowa 1998) (holding that violations of plea agreements "are intolerable and adversely impact the integrity of the prosecutorial office and the entire judicial system"). We also agree with the statement made by the West Virginia Supreme Court that "[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." *State ex rel. Brewer v. Starcher,* 195 W.Va. 185, 465 S.E.2d 185, 192 (1995). Therefore, "violations of either the terms or the spirit of the agreement" require reversal of the conviction or vacation of the sentence. *Stubbs v. State,* 114 Nev. 1412, 972 P.2d 843, 844 (1998).

We turn now to the facts before us. The State argues that the county attorney did not breach the plea agreement for several reasons: (1) "the prosecutor explicitly referred to the plea agreement, and

made the recommendation set forth in that written agreement"; (2) "the prosecutor never recommended that the sentencing court follow the presentence investigator's recommendation"; and (3) "[t]he plea agreement did not include any provision regarding the prosecutor's silence at sentencing." We find these justifications for the prosecutor's conduct unconvincing.

■ The State apparently believes that its obligation under the plea agreement is satisfied if it simply informs the court of the promise the State has made to the defendant with respect to sentencing. This interpretation of the State's promise to "recommend" a particular sentence is totally at odds, however, with the common meaning of the word "recommend." The following dictionary definitions of this term are enlightening:

(1) : to mention or introduce as being worthy of acceptance, use, or trial ...
(2) : to make a commendatory statement about as being fit or worthy ...
(3) : to bring forward as being fit or worthy: present with approval : indicate as being one's choice for something or as otherwise having one's approval or support : offer or suggest as favored by oneself ...

*Webster's Third New International Dictionary* 1897 (unabr. ed.1993). It is clear that the State's promise to recommend specific sentences to the court requires the prosecutor to present the recommended sentences with his or her approval, to commend these sentences to the court, and to otherwise indicate to the court that the recommended sentences are supported by the State and worthy of the court's acceptance. *See United States v. Brown,* 500 F.2d 375, 377 (4th Cir.1974) (holding that a prosecutor's "formal recitation of a possible sentence" does not satisfy the obligation to "make a recommendation" of a particular sentence; the recommendation must be "expressed with some degree of advocacy"). This standard complements the prosecutor's duty "to assure that a fair and informed judgment is made on the sentence." ABA Standards for Criminal Justice 3–6.1(a) (2d ed.1980). If the prosecutor keeps this duty in mind when negotiating a plea agreement, so that any agreed-upon sentencing recommendation is "fair" under the circumstances, then the prosecutor should have no problem in truly recommending the negotiated sentence to the court.

We turn now to an examination of the county attorney's statement at the sentencing hearing in this case to determine whether the county attorney fulfilled his promise to "recommend" the sentences set forth in the plea agreement. While it is true, as the State argues, that the prosecutor made the court aware of the State's obligations under the plea agreement with respect to sentencing recommendations, it is far from clear that the county attorney conveyed the State's support for the recommendations he was required to make. To the contrary, the county attorney undercut the benefit of the State's promised sentencing recommendations by referring twice to the "alternative recommendation" of the PSI and detailing the circumstances of the defendant's offenses in such a way as to support the PSI recommendation. One hearing the county attorney's comments would at best be ambivalent with respect to which recommendation met with the State's approval—the recommendation it promised to make in the plea agreement or the recommendation made by the presentence investigator. At worst, the county attorney appeared to make an official recommendation in compliance with the plea agreement and an alternative recommendation, the PSI recommendation, that the prosecutor considered as more appropriate given the circumstances of the offenses.

■ The State's promise to make a sentencing recommendation is of little value to the defendant if such a promise did not carry with it the implicit obligation to refrain from suggesting more severe sentencing alternatives. Moreover, the written plea agreement need not contain a

promise by the prosecutor to remain silent in order to give rise to this duty. *See Stubbs,* 972 P.2d at 845.

In conclusion, the county attorney breached the plea agreement by failing to commend the recommended sentences to the court or otherwise inform the court that the State supported the suggested sentencing of the defendant. *See Brown,* 500 F.2d at 376 (holding that a plea agreement had been breached when the prosecutor only "halfheartedly" made the agreed-upon recommendation, stating to the court that he had "some problems" with the recommendation). The prosecutor also breached the plea agreement by informing the court of an "alternative recommendation" and making statements implying that the alternative recommendation was more worthy of acceptance. *See Brunelle v. United States,* 864 F.2d 64, 64–65 (8th Cir.1988) (holding the government breached its plea-agreement promise to recommend an "unspecified period" of incarceration by stating to the sentencing court that "[t]he·ten year maximum here, consecutive sentencing, that would be perfectly appropriate"); *Stubbs,* 972 P.2d at 844–45 (holding that the prosecutor breached the plea agreement when, after having stated the required recommendation, the prosecutor related a disparaging assessment of the defendant's offense to the court). Finally, the prosecutor breached the plea agreement by requesting "an appropriate sentence" rather than the sentence he had agreed to recommend. *See Brunelle,* 864 F.2d at 64–65.

■ B. *Would a reasonably competent attorney have objected to the State's breach of the plea agreement?* As we noted earlier, when a defendant is induced to enter a guilty plea by a promise or agreement of the prosecutor, the prosecutor is bound to fulfill that promise or agreement. *See Santobello,* 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d at 433. This court has previously stated that " '[i]t is difficult to perceive of a more effective influence on a decision whether or not to plead guilty to a criminal offense than an agreement with a prosecuting officer relative to his recommendation as to a sentence.' " *State v. Runge,* 228 N.W.2d 35, 37 (Iowa 1975) (quoting *White v. Gaffney,* 435 F.2d 1241, 1244 (10th Cir.1970)). Applying these principles here, we hold that once Horness pleaded guilty to second-offense OWI and child endangerment, the county attorney was obligated to make the agreed-upon sentencing recommendations. As we have already determined, he did not do so.

■ When the State breached the plea agreement, the defendant's trial counsel clearly had a duty to object; only by objecting could counsel ensure that the defendant received the benefit of the agreement. Moreover, no possible advantage could flow to the defendant from counsel's failure to point out the State's noncompliance. *See Carrillo,* 597 N.W.2d at 500. Defense counsel's failure in this regard simply cannot be attributed to improvident trial strategy or misguided tactics. *See generally Osborn v. State,* 573 N.W.2d 917, 922 (Iowa 1998). We conclude, therefore, that the defendant's trial counsel failed to perform an essential duty.

IV. *Was the Defendant Prejudiced by Trial Counsel's Failure to Object to the County Attorney's Breach of the Plea Agreement?*

Under similar circumstances, we recently held that a defendant is prejudiced when he pleads guilty to a crime in reliance on a promise by the State that is later not performed. *Carrillo,* 597 N.W.2d at 500; *accord State v. Smith,* 207 Wis.2d 258, 558 N.W.2d 379, 389 (1997) (holding the defendant "was automatically prejudiced when the prosecutor materially and substantially breached the plea agreement"). We rejected the State's argument that a defendant must establish that "but for his counsel's failure to object, he would have received a different sentence." *Carrillo,* 597 N.W.2d at 500. We held the defendant must simply show that the out-

come of the proceeding would have been different. *Id.*

◼ That is the case here. A proper objection by the defendant's attorney would have alerted the sentencing court to the prosecutor's breach of the plea agreement. In that circumstance, the court would have allowed the defendant to withdraw his guilty pleas, or would have scheduled a new sentencing hearing at which time the prosecutor could make the promised recommendations. *See Santobello,* 404 U.S. at 262–63, 92 S.Ct. at 499, 30 L.Ed.2d at 433; *King,* 576 N.W.2d at 371. The outcome of the defendant's sentencing proceeding was different, however, because defense counsel did not make the necessary objection. Consequently, the defendant was sentenced by the court at a hearing tainted by the prosecutor's improper comments. Therefore, the defendant has established that he was prejudiced by his trial counsel's failure to perform an essential duty.

## V. *Disposition.*

Horness has shown that he received ineffective assistance from his trial counsel. Therefore, his attorney's failure to object to the prosecutor's breach of the plea agreement does not prevent the court from vacating his sentence and remanding the case for resentencing based on the prosecutor's breach of the negotiated plea agreement. We vacate the decision of the court of appeals, vacate the sentences entered upon the defendant's guilty pleas, and remand for resentencing before a different judge.

**DECISION OF COURT OF APPEALS VACATED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING.**