# IN THE COURT OF APPEALS OF IOWA

No. 19-2029
Filed February 17, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JENNIFER LYNN TUCKER,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Des Moines County, Mark E. Kruse,

Judge.


        Jennifer Tucker appeals her convictions for possession with intent to deliver

drugs.  **REVERSED AND REMANDED.**




        Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney

General, for appellee.



        Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**DOYLE, Presiding Judge.**

Written contracts with unwritten expectations spawn litigation. That's what we face here.

Jennifer Tucker appeals her convictions for possession with intent to deliver drugs. Among other things, she argues the district court erred in denying her motion to dismiss and to enforce her cooperation agreement. Under the agreement, the State would dismiss the drug charges if Tucker worked with members of a drug task force. Tucker claims she fulfilled her obligation and the State breached the agreement. The State argues Tucker was the one to breach the agreement. We find Tucker upheld her end of the bargain. Thus, we grant specific performance and reverse the denial of Tucker's motion to dismiss. We vacate the drug convictions and sentences and remand for dismissal of the drug charges in accordance with the agreement.

## I. Facts and Proceedings.

Tucker admits that she has been a drug user for more than twenty years. Methamphetamine is her drug of choice.

During the investigation of a storage unit burglary, Tucker and Jerrid Weaver became suspects. Police obtained a search warrant to search both Tucker's and Weaver's homes. Armed with the search warrant, four officers searched Tucker's residence. They found a digital scale in a closet along with a baggie of heroin weighing 27.95 grams. A plastic bag containing 21.92 grams of methamphetamine and a meth pipe were recovered from Tucker's purse.

Tucker was charged with count I, possession of a controlled substance (more than five grams but not more than five kilograms of methamphetamine) with

intent to deliver, a class "B" felony, in violation of Iowa Code section 124.401(1)(b)(7) (2018). She was also charged with count II, possession of a controlled substance (heroin) with intent to deliver, a class "C" felony, enhanced as an habitual offender, in violation of Iowa Code sections 124.401(1)(c)(1) and 902.8. She was also charged with third-degree burglary in a separate case.

After the district court denied Tucker's first motion to suppress, the parties negotiated a plea agreement for the drug and burglary cases. This was done through emails exchanged between the prosecutor and defense counsel. It was agreed that if Tucker made a proffer to the drug task force, the State would dismiss her drug charges. If she proffered and testified against Weaver at his burglary trial, the State would agree to a plea and to recommend a suspended sentence in Tucker's burglary charge. At a February 2019 pretrial conference for both her cases, the parties informed the district court they reached a plea agreement but were not prepared to enter it at that time. Tucker waived her right to a speedy trial and withdrew her second motion to suppress. She also asked the court to continue her trial date and grant her supervised pretrial release. The district court granted her requests and set a June trial date. Soon after, Tucker sat down with members of the drug task force for a proffer. Tucker also testified against Weaver at his mid-March burglary trial. Weaver's trial ended with a hung jury.

About a month later, after violating conditions of her release (failing to report to drug treatment and failing to submit to random drug tests), the court revoked Tucker's pretrial release supervision and issued a warrant for her arrest. Tucker was not immediately found. She was a no-show at Weaver's mid-May retrial. She

was a no-show at an early June pretrial conference. Her whereabouts were unknown, but in late June she was arrested and taken into custody.

At a July 2019 pretrial conference, Tucker reasserted her right to a speedy trial and requested a hearing date on her previously withdrawn second motion to suppress. The district court denied the motion to suppress at a September hearing, noting Tucker's previous withdrawal of that motion.

Tucker then moved to dismiss and to enforce the plea agreement. At the hearing, Tucker argued there were two separate agreements—one for the drug case and one for the burglary case. The hearing only concerned the drug case, and Tucker believed she complied with the agreement in the drug case since she met with the drug task force members and did a proffer. She argued that if the State wanted her to do more, such as make controlled buys, those conditions could have been included in the agreement but were not. The State viewed the agreement as a comprehensive agreement that included both cases. Its position was that any violation of the agreement would violate the entire agreement. The State argued Tucker was no stranger to task force agreements and, in its opinion, it was clear she was to work with the task force, not just meet with them. It contended Tucker violated the agreement by not doing more, such as making controlled buys or making phone calls to targets. By the time the task force was ready for her to do those things, she had absconded. The State conceded Tucker testified at Weaver's first burglary trial but claimed Tucker violated the agreement in failing to testify at Weaver's retrial. Not buying Tucker's testimony, the court denied her motion.

A jury trial followed. A deputy testified that when questioned at a police interview about the origin and purpose of the drugs, Tucker admitted that she obtained the heroin from a dealer and was trying to "move" the heroin for him. But because she did not have any heroin customers, she meant to return the heroin back to the dealer. The deputy opined that based on his training and experience the methamphetamine and heroin Tucker possessed were most likely for distribution. He also opined that those who use methamphetamine generally use a "tenth of a gram to half a gram at a time." He estimated that the bag of methamphetamine seized from Tucker could support up to hundred and fifty doses. In regard to the heroin, it was a sufficiently large amount to satisfy at least 280 doses and was worth about $2800. He pointed out that the heroin was separated in two baggies—a larger bag and a smaller bag—suggesting that it was packaged for delivery.

At trial, Tucker admitted the methamphetamine found in her purse was hers, but that it was for her own use. She testified she obtained the bag a day or two before it was seized and that she had smoked some of it. Tucker said she usually buys an ounce—about twenty-eight grams—at a time. She claimed she did not use nor had she ever used heroin. As for the heroin found in the closet, she explained that her drug dealer just included it with the methamphetamine thinking Tucker would be interested in purchasing it. She said she planned to return the heroin to her dealer so she would not have to pay for it.

The jury found Tucker guilty as charged. The court sentenced her to twenty-five years in prison on count I and fifteen years on count II. The sentences were to run consecutively.

Tucker now appeals and raises three arguments: (1) the district court erred in denying her motion to dismiss and to enforce the plea agreement; (2) the evidence was insufficient to establish she had the intent to deliver the drugs; (3) the district court abused its discretion in failing to give reasons for imposing consecutive sentences.

## II.    Scope of Review.

> When faced with a motion to dismiss as a sanction for the State's alleged repudiation of a plea agreement, the district court has the same limited discretion it has 'when ruling on a motion to dismiss for failure to provide a speedy trial under Iowa Rule of Criminal Procedure [2.33(2)].'

*State v. Beres*, 943 N.W.2d 575, 582 (Iowa 2020) (alteration in original) (citation omitted).  "If the district court abused its limited discretion by finding the State did not repudiate the plea agreement, we will reverse its finding." *Id.* (citation omitted).

## III.   Analysis

### A.  Motion to Dismiss and Plea Agreement.

On appeal, Tucker maintains she is entitled to specific performance of the plea agreement because she complied with its terms.  We agree.

"Plea bargains are akin to contracts."  *Beres*, 943 N.W.2d at 582 (citation omitted).  "It is well established that 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration [for the plea], such promise must be fulfilled.'"  *State v. Horness*, 600 N.W.2d 294, 298 (Iowa 1999) (alteration in original) (citation omitted).  And, "[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most

meticulous standards of both promise and performance." *Id.* (alteration in original) (citation omitted).

"If a defendant fails to uphold his or her end of the agreement, the State has no obligation to provide the defendant the anticipated benefits of the bargain." *State v. Foy*, 574 N.W.2d 337, 339–40 (Iowa 1998). But it is the State's "burden to show [a] defendant has failed to live up to his or her end of the bargain." *Id.* "'[V]iolations of either the terms or the spirit of the plea agreement' require reversal of the conviction or vacation of the sentence." *Horness*, 600 N.W.2d at 298 (citation omitted).

We begin with the agreement itself. The email from the prosecutor to defense counsel states:

> I've spoken with [members of the drug task force] and the victim in the burglary. We are prepared to give the following offer.
> Ms. Tucker has expressed interest in working with the Task Force. If she is still willing to follow through on that, the State is willing to dismiss the charges in the drug case. As for the Burglary, if she agrees to proffer and testify against Jerrid Weaver, we can agree to a plea to Burglary in the 3rd Degree where each side will recommend a suspended sentence, contingent on her cooperation and testimony against Mr. Weaver. She will also be responsible for restitution, joint and severally, with Jerrid Weaver, and I want to warn you that the restitution number is going to be high based on the items that were taken. If Ms. Tucker is receptive to this offer, I propose that instead of doing depositions on Friday, she instead will sit down with [drug task force deputies] and do the proffer/Task Force agreement. After that, the State would be fine with proceeding to a plea and then taking up the issue of release pending sentencing.
> Please let me know what you and your client think of this offer.

Five days later, after meeting with Tucker in jail, defense counsel accepted the offer:

> I spoke to Jennifer Tucker and she is agreeable to the plea offer. Therefore I agree that we not take depositions on Friday and that the officers meet with Jennifer on Friday. We have a hearing

scheduled March 1st at 2:30 and a plea can be entered at that time. Please let me know if this is acceptable and if so I will call off the court reporter and your office will need to contact the witnesses regarding Friday.

The next day, the prosecutor responded:

I did everything but respond to you. I called off the witnesses for tomorrow, and I told [the drug task force members] to instead go to the jail tomorrow at 1:00 to speak with Ms. Tucker. I agree that we can do the plea on that March 1st date.

Defense counsel emailed back: "Ok. Sounds good. I will call off the court reporter."

Here both parties claim the other party did not uphold their end of the bargain. Tucker asserts she fulfilled what the prosecutor specifically asked of her in the plea agreement—she made a proffer to representatives of the drug task force and she testified against Weaver at his trial. The State claims Tucker failed to fully perform her obligations. The State expected more than just a proffer from Tucker—the typical task force agreement requires one to continue to provide information, participate as a confidential source, and participate in controlled buys. When the task force needed Tucker's services, it was unable to reach her.

The court held:

[The defendant] absconded from supervision almost immediately after her release, failed to appear for a pretrial conference, there were warrants out for her arrest. . . . [H]er assertion of cooperation in those circumstances is at least circumspect right at the beginning.
Regarding the statement . . . in the burglary case with Mr. Weaver, she did not know she had to come back and testify after a hung jury. The court does not find that credible, that she did not know she had to keep in contact until that matter was resolved. When you simply take off, don't abide by court orders, again, . . . there's an almost automatic presumption that you're just not following through with what you agreed upon.

Further, the court does find from the language in the . . . email by [the prosecutor], that this was together, comprehensive, not apart, not separate. There were two things. Not doing one thing takes away from the other.

The third thing in—or a couple other things is that the defendant, again, is no novice to this from the testimony of [drug task force deputy]. There was already an existing cooperation agreement which she had already violated. To sit there and say she didn't know what was expected of her, just expected to meet with you and say this and that and I'm done, dismiss the charges, is simply not credible. The email states she is to work with the task force, which doesn't mean just meet, tell them something and then leave.

The court finds it's very clear. I don't find anything unambiguous regarding what was agreed upon here. She was supposed to show up, she was supposed to do certain things for the task force, which she never did. She didn't do them before, she didn't do them this time, so the motion in . . . both cases are overruled. We'll proceed to trial tomorrow.

We disagree.

Although the State may have had certain expectations of Tucker, they were not spelled out in the agreement. To be fair, the prosecutor expected that a task force agreement for the drug case would be entered into between Tucker and the State. That did not happen due an omission on the part of a task force deputy who met with Tucker at her proffer. He explained that he did not bring the usual task force agreement when he met with Tucker because he thought the previous agreement he had with her, for working as a confidential informant, would be sufficient. This was an erroneous assumption for nothing in the record shows the previous agreement applies here. And nothing in the present agreement provided that Tucker would be bound by terms of a previous agreement. In any event, even if a previous agreement were somehow applicable here, its terms are not a part of our record. That Tucker may have been familiar with terms of a previous task force agreement is of no consequence. Tucker cannot be bound by terms she may have

only anticipated but were not specifically agreed to. Indeed, that the previous terms were not imposed here could lead a reasonable person to believe they did not apply this time around. We consider what the parties agreed to, not what they could have agreed to.

The only agreement is the email exchange between the prosecutor and defense counsel. The plain language of the agreement requires Tucker working with the task force by "sit[ting] down with [drug task force deputies] and do the proffer/Task Force Agreement." She did do the proffer. Through no fault of Tucker, the State failed to follow through with execution of a task force agreement. So the typical task force agreement terms do not apply here.

We want to emphasize a few key facts specific to this case that drive the outcome. We acknowledge the email from the prosecutor making the plea offer contemplated a future agreement being executed that would spell out in more detail what was expected of Tucker. We also acknowledge it may have taken some time after Tucker's initial proffer to put together such an agreement, as the details to include in the agreement may have been determined by the information Tucker revealed at her proffer—although the email from the prosecutor seems to imply that a task force agreement would be presented to Tucker at the proffer. Had the evidence presented at the hearing on Tucker's motion to dismiss established Tucker was informed that she would be required to sign a task force agreement sometime after her proffer, and law enforcement worked diligently to prepare such an agreement after the proffer and, by the time it was completed, Tucker was nowhere to be found to sign it, the outcome may be different. However, the evidence in this case established that Tucker was not told at her proffer that she

would be required to sign a task force agreement at a later date, and no such agreement was in the works before she disappeared approximately two months after the proffer. The detective involved acknowledged he had not made any effort to prepare an agreement to present to Tucker at the time of the proffer or to prepare one after the proffer. Instead, he incorrectly assumed Tucker would be operating under the terms of a previous task force agreement Tucker had signed in another case when neither Tucker nor the prosecutor had agreed to be bound by the terms of the previous agreement. Given the lack of evidence that a task force agreement was in the process of being prepared or preparation of such an agreement was even being contemplated, we find no violation of the plea agreement by Tucker. We conclude Tucker performed as required on the drug case, so the State should have dismissed the drug charges. But, of course, there is more.

The State contends Tucker failed to hold up her end of the bargain in the burglary case. Although Tucker testified against Weaver in his first trial, the State complains Tucker failed to testify in Weaver's retrial and therefore reneged on the deal. The State argues the agreement required "full performance" by Tucker. In other words, the agreement's drug case and burglary case requirements were tied together and Tucker's failure to perform in one case "vitiates any claim of full performance." Without full performance on Tucker's part, the State asserts Tucker is in breach and the State has no duty to perform. We see nothing in the agreement that ties together Tucker's drug case and burglary case obligations. Even if the agreement could be construed as ambiguous on the point, ambiguities in the plea agreement are to be construed against the State. *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862–63 (Iowa 1991)

12

("When a contract is not ambiguous, it will be enforced as written, but when there are ambiguities in a contract, they are strictly construed against the drafter." (internal citation omitted)); *see also Beres*, 943 N.W.2d at 588 (Appel, J., concurring specially) (recognizing "an emerging rule of interpretation dictates that plea bargains should be construed against the government, with ambiguities in the plea agreement to be construed against the state").  Because the plea agreement did not unambiguously state fulfillment of Tucker's obligations in the burglary case were necessary to fulfill her obligations in the drug case, we view the plea agreements as separate agreements.  Therefore, whether Tucker fulfilled her obligations under the plea agreement in her burglary case is inconsequential to resolution of the question whether Tucker fulfilled her obligations under the plea agreement in the drug case.  Having concluded Tucker met her obligations in the drug case, the State was obligated to dismiss the drug charges regardless of whether Tucker fulfilled her obligations in the separate burglary case.

To sum up, the State did not carry its burden to show that Tucker was asked to perform additional duties with the drug task force.  The devil is in the details, and here there were no details.  Although Tucker did not perform as the State wished, Tucker performed as required under her agreement with the State.  In repudiating the agreement, the State breached the agreement.  For these reasons, we grant specific performance here and reverse the denial of Tucker's motion to dismiss.  We vacate the drug convictions and sentences and remand for dismissal of the drug charges in accordance with the agreement.

In view of our disposition, we need not address Tucker's sufficiency of the evidence and consecutive sentences arguments.

**IV.    Conclusion.**

We grant specific performance and reverse the denial of Tucker's motion to dismiss.  We vacate the drug convictions and sentences and remand for dismissal of the drug charges in accordance with the agreement.

**REVERSED AND REMANDED.**