# IN THE COURT OF APPEALS OF IOWA

No. 22-1463
Filed August 9, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MATTHEW JAMES WILLIAMS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Tom Reidel, Judge.


        Matthew Williams appeals the sentences imposed following his guilty plea to three charges. **SENTENCES VACATED AND REMANDED FOR RESENTENCING WITH DIRECTIONS.**


        Jack Bjornstad of Jack Bjornstad Law Office, Spirit Lake, for appellant.

        Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.


        Considered by Tabor, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Matthew Williams pleaded guilty to third-degree burglary; domestic abuse assault by impeding air/blood flow; and domestic abuse assault, second offense; in violation of Iowa Code sections 713.6A(1), 708.2A(2)(d), and 708.2A(3)(b) (2021), respectively. The court sentenced him to indeterminate terms of incarceration not to exceed five years on the burglary charge, two years on the domestic-abuse-assault charge, and two years on the second-offense domestic-abuse-assault charge. The court ordered the sentences on the domestic-abuse-assault charges to run concurrent to each other, but consecutive to the sentence on the burglary charge, resulting in a total term of incarceration not to exceed seven years.

Williams appeals. He contends the State breached the plea agreement, he was not afforded the opportunity to withdraw his plea when the court refused to be bound by the terms of the plea agreement, and the court failed to provide reasons for imposing consecutive sentences.[1]

Williams first argues the State breached the parties' plea agreement by failing to advocate for concurrent sentences. Our review of criminal sentences is for correction of errors at law. *State v. Patten*, 981 N.W.2d 126, 130 (Iowa 2022). Vacating a sentence is warranted when the record shows either an abuse of

---

[1] A defendant must establish good cause to appeal following a guilty plea to a crime other than a class "A" felony. Iowa Code § 814.6(1)(a)(3). Because Williams challenges his sentence and the procedure of the sentencing hearing rather than the guilty plea itself, he has established good cause. *See State v. Boldon*, 954 N.W.2d 62, 69 (Iowa 2021) (finding good cause when there is a claimed breach of the plea agreement and a challenge to the sentence).

discretion or a defect in the sentencing procedure. *Id.* Breach of a plea agreement is a defect that warrants vacation of a sentence. *Id.*

We begin by reviewing the terms of the plea agreement. Those terms are set forth in a memorandum of plea agreement filed with the district court. Pared to its essence, the agreement included charging concessions, with the State being obligated to dismiss multiple charges. It also included limited sentencing concessions. The agreement called for an "open plea"—which we interpret as "open sentencing," meaning each party was free to argue for whatever sentence the party deemed appropriate—with the limitation that the State was confined to recommending concurrent sentences.

With the State's obligation to recommend concurrent sentences in mind, we turn to the statements made by the State at the sentencing hearing. When called upon to give the State's recommendations, the prosecutor gave this statement and answer to the court's request for clarification:

> Your Honor, in [the burglary case], the State is recommending incarceration for a term not to exceed five years. That is in line with the [presentence investigation report], and the State believes that the term of incarceration is appropriate based upon the defendant's criminal history and his age, his unwillingness, even though he pled guilty, to accept responsibility for his crime.
>
> In the [presentence investigation report], he states that he came through a back door at the Dollar General, when in reality he actually stayed inside of the building and waited until it closed. So he was in one of the rooms in the business while one of the workers was closing up.
>
> He also states that he was just hungry. He was homeless. He stole seventy packs of cigarettes. There's food in the Dollar General, so if he was hungry, then that would have been an opportunity to get food. So he's not being honest in the way that he is recalling the series of events.
>
> At the time, he also—I believe he picked up a charge in Illinois. It may have been before this, but there was a burglary that he was

on probation for in Rock Island, and he was participating in drug court at the time that he actually got these new charges in Iowa.

So he was given probation and was put in—placed in drug court in Illinois, and instead of taking that opportunity and getting himself cleaned up and straight, he decided to come to Iowa and commit additional crimes.

So for those reasons, Your Honor, the State believes that a prison sentence would be in the best interests of the public, and it appears that it may be in the best interests of the defendant, and I'm sure he'll disagree, but it appears he needs to have some serious drug treatment and he also needs an opportunity to complete his [Iowa Domestic Abuse Program (IDAP)] and other substance abuse treatment that he's probably in need of.

In [the domestic-abuse-assault-by-impeding-air/blood-flow case], the State is recommending a term of incarceration not to exceed two years, and the reason we think that that's appropriate in this case is that the defendant has a history of domestic violence against others, and then this victim, who is his wife and happens to be here today, she would like to have an opportunity to speak.

Again, he was on probation in Illinois and he was on pretrial release from the state of Iowa in the burglary case when he assaulted his wife multiple times. She reported two of the incidents in which she was slapped, kicked—excuse me—slapped, punched. He head butted her in one of the incidents. I can't remember which one, but she had to go to the hospital. She had a huge goose egg on her forehead.

And based on his criminal history, again, his domestic violence cases, he violated the no contact order in past cases, he violated the no contact order in this case, it took him months and months to complete IDAP. He was revoked from probation multiple times because he did not complete IDAP in his 2015 conviction for domestic abuse assault.

And then there was a domestic abuse assault case in 2007 in Jefferson County, Iowa, where he was held in contempt because he failed to complete the [batterers' education program (BEP)] class.

THE COURT: But that charge was amended to just assault and not domestic abuse assault; is that correct?

PROSECUTOR: I believe so, Your Honor, but he was still ordered to do the BEP class, so it may not be a domestic abuse assault conviction, but he was held in contempt for not completing the [BEP] in that case.

He has a pending—he has a warrant right now for violating the terms of his probation. I would assume that is because of the charges that he has in Iowa. So the State believes that two years—an indeterminate term of incarceration not to exceed two years is appropriate in [the domestic-abuse-assault-by-impeding-air/blood-flow case].

And then in the [domestic-abuse-assault-second-offense case], the State would recommend a suspended sentence, and that the cases—or the terms of incarceration be run concurrently, the minimum fines. And I believe the court already addressed the dismissal of [a fourth case covered by the plea agreement].

Whenever the court deems it appropriate, the victim . . . would like an opportunity to speak on these matters. Thank you.

Our standards related to determining whether the State has failed to honor a plea agreement are based on the fact that such agreements are "akin to contracts." *State v. Davis*, 971 N.W.2d 546, 556 (Iowa 2022) (citation omitted). As a result, when prosecutors bind themselves to make a sentencing recommendation, they must do more than simply inform the court of their promise—they have the obligation to actually fulfill it. *Id.* Because of that obligation, violations of either the terms or spirit of the agreement require vacation of the sentence. *Id.* Fulfilling the obligation to make a specific sentencing recommendation requires "giving some reason in support of that recommendation," which must be more than "pa[ying] cryptic lip service" to the agreement. *Id.* at 557; *see also State v. Horness*, 600 N.W.2d 294, 299 (Iowa 1999) ("It is clear that the State's promise to recommend specific sentences to the court requires the prosecutor to present the recommended sentence with his or her approval, to commend these sentences to the court, and to otherwise indicate to the court that the recommended sentences are supported by the State and worthy of the court's acceptance.").

Here, the prosecutor agreed to make a recommendation for concurrent sentences. But, while the words "terms of incarceration be run concurrently" were technically spoken, they were spoken almost as an afterthought after a lengthy litany of negative details about Williams. Further, no reason was given in support

of the recommendation either before, during, or after the listing of negative details. *See Davis*, 971 N.W.2d at 557 (requiring "some reason" to be given in support of a sentencing recommendation). The State points out that the prosecutor's listing of negative details was appropriate to support the State's request for incarceration. But Williams is not claiming error based on the listing of negative details, so we agree with the State that there was nothing intrinsically inappropriate about the prosecutor's recitation of negative details. The problem is that the recitation was coupled only with a perfunctory statement of the State's recommendation for concurrent sentences with no reason given in support of the recommendation—a reason the prosecutor was required to give. *See id.* Without giving a reason for it, the recommendation did not "indicate to the court that the recommended sentences [were] supported by the State and worthy of the court's acceptance." *Horness*, 600 N.W.2d at 299. As a result, the State breached the plea agreement, Williams's sentences are vacated, and the case is remanded for resentencing before a different judge, with the prosecutor obligated to honor the plea agreement. *See Davis*, 971 N.W.2d at 558 ("The remedy for the State's breach is 'resentencing by a different judge, with the prosecutor obligated to honor the plea agreement and sentencing recommendation.'" (quoting *State v. Lopez*, 872 N.W.2d 159, 181 (Iowa 2015))).

As resentencing has been ordered, it is unnecessary to address Williams's claim that the court erred by failing to give reasons for imposing consecutive sentences. But we do need to address Williams's final challenge—that he was not afforded the opportunity to withdraw his plea when the court refused to be bound by the terms of the plea agreement.

This issue is complicated due to the parties using a plea-agreement form that was not fully completed. The final paragraph of the plea-agreement form consisted of one sentence that reads, "Concurrence of the Court to this Agreement is/is not a condition to the acceptance of the plea." This sentence clearly calls for an option to be selected, but neither the "is" nor the "is not" option was chosen.[2] Any uncertainty caused by this failure to select an option was negated by the district court's order approving Williams's guilty plea. In that order, the district court found that the parties' plea agreement conditioned Williams's guilty plea on the court's willingness to be bound by the agreement. The order also deferred the court's decision whether to be so bound until it received the presentence investigation report, as the court was entitled to do. *See* Iowa R. Crim. P. 2.10(2) ("[T]he court may accept or reject the agreement, or may defer its decision as to acceptance or rejection until receipt of a presentence report.").

The State did not and does not challenge the court's order finding the pleas to be conditioned on the court's concurrence, so we give effect to that order and treat the plea agreement as being so conditioned despite the ambiguity in the plea agreement itself. Because the court's concurrence was so conditioned and the plea agreement capped the State's sentencing recommendation at concurrent sentences, the court was prohibited from imposing a sentence greater than

---

[2] We take this opportunity to note that this is not the first time we have seen parties neglect to choose one of the options with this form. Given the layout of the form, we understand that it would be easy to overlook the need to select an option because the need to select an option is not highlighted in any fashion. Because failure to choose one of the options creates uncertainty for the parties, the district court, and the appellate court, we encourage parties that use this form to modify it to make the need to choose one of the options more apparent or to be more diligent in the use of the current form to make sure an option is chosen.

concurrent sentences without informing Williams of its refusal to follow the plea agreement and giving Williams the opportunity to withdraw his guilty pleas. *See* Iowa R. Crim. P. 2.10(4) ("If . . . the court refuses to be bound by or rejects the plea agreement, the court shall inform the parties of this fact, afford the defendant the opportunity to then withdraw defendant's plea, and advise the defendant that if persistence in a guilty plea continues, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."). On remand, the new judge presiding over resentencing must comply with Iowa Rule of Criminal Procedure 2.10(4). That is to say, if the judge intends not to be limited to concurrent sentences, the judge must inform the parties of this fact, give Williams the opportunity to withdraw his pleas, and advise Williams that if he persists in his guilty pleas, the disposition of the case may be less favorable to Williams than contemplated by the plea agreement.

In conclusion, we vacate Williams's sentences and remand for resentencing before a different judge, with the prosecutor obligated to comply with the terms of the plea agreement. In conjunction with resentencing on remand, the new judge shall ensure compliance with rule 2.10(4) as discussed in this opinion.

**SENTENCES VACATED AND REMANDED FOR RESENTENCING WITH DIRECTIONS.**