# IN THE COURT OF APPEALS OF IOWA

No. 23-0373
Filed October 30, 2024


**CHAD LEROY WILSON,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____


     Appeal from the Iowa District Court for Mills County, Richard H. Davidson,

Judge.


     A defendant appeals the denial of postconviction relief.  **AFFIRMED.**


     Brian S. Munnelly, Omaha, Nebraska, for appellant.

     Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee State.


     Considered by Schumacher, P.J., Langholz, J., and Vogel, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**VOGEL, Senior Judge.**

Chad Leroy Wilson seeks postconviction relief (PCR) from his convictions arising out of sexually abusing his stepdaughter. He argues the State's experts improperly vouched for the stepdaughter, the State did not prove when the abuse occurred with enough specificity, and his life sentences are unconstitutional. He asserts that his trial and appellate counsel's failure to raise these issues deprived him of effective assistance. On our review, we find counsel did not breach any essential duties and Wilson waived his arguments as to his life sentences and one of the experts. Thus, we affirm the PCR court.

## I. Factual Background and Proceedings.

The State charged Wilson with third-degree sexual abuse, two counts of lascivious acts with a child, and two counts of indecent contact with a child. At trial, the State proved the following material facts to the satisfaction of the jury.

Wilson married a woman who brought two children to the marriage. Wilson at first had good relationships with his stepchildren, but that changed when the stepdaughter turned twelve. After she started menstruating, Wilson began making inappropriate remarks—"If you're a bleeder, you're a breeder." Wilson would ridicule the stepdaughter when the mother was present but call her "beautiful" when they were alone. He referred to a nickname for his penis and told her "it wants to meet your kitty." Wilson also asked the daughter to view "daddy and daughter porn" on his phone. He told her "it wasn't weird" and "a bunch of stepdads and stepdaughters are doing it."

Wilson soon escalated his inappropriate conduct to sexual abuse. One afternoon while the stepdaughter was watching a movie, Wilson laid down behind

her on the couch, removed her shorts, took off his own pants, and inserted his penis into her vagina. She kicked him away and fled to her room. Another time, Wilson entered the bathroom while the stepdaughter was taking a bath and inserted his finger into her vagina. Yet another time, Wilson entered the bathroom while the stepdaughter was getting dressed, told her she was a "pretty girl," and inserted his finger into her vagina.

Wilson also groped the stepdaughter several times. He once reached into her shirt while they were alone in the car, stopping only when the stepson approached the car. Another time, the two were alone and he came up behind her, reached into her shirt, and grabbed her breasts. Like before, he stopped only when someone walked into the room. The stepdaughter was twelve years old during all these events, except for one incident of groping when she was thirteen.

During this time, the stepdaughter asked to switch bedrooms with her brother—his room had a lock. The brother also overheard several of Wilson's sexual comments to the stepdaughter. The stepdaughter was scared to tell anyone about Wilson's abuse, but she finally confided in her mother after hearing Wilson threaten the mother during a fight. When the mother confronted Wilson, he asked if the mother planned to "push this." The mother said yes, and Wilson responded, "why don't you let me move to Alaska and you'll never see or hear from me again."

The jury found Wilson guilty on all five counts. He was sentenced to three concurrent life sentences in prison. Wilson appealed and our court remanded for resentencing, finding he unknowingly and involuntarily stipulated to a prior sexual abuse conviction. *See State v. Wilson*, No. 18-0536, 2019 WL 6894231, at *4

(Iowa Ct. App. Dec. 18, 2019). On remand, Wilson again stipulated to the prior offense and three concurrent life sentences were again imposed.

Wilson then applied for PCR. After motion practice, the application was narrowed to three allegations of ineffective assistance by trial and appellate counsel: (1) the State's experts improperly vouched for the victim's credibility, (2) the State's lack of precise dates and times for the instances of abuse functionally shifted the burden of proof, and (3) his life sentences are unconstitutional.

The PCR court denied relief. On the vouching issue, trial counsel moved in limine to exclude the expert's testimony and the trial court properly denied that motion under our caselaw that recognizes a "very thin line between testimony that assists the jury in reaching its verdict and testimony that conveys to the jury that the child's out-of-court statements and testimony are credible." *See State v. Dudley*, 856 N.W.2d 668, 677 (Iowa 2014). On the burden-shifting issue, the State was not required to prove the crimes occurred on a particular date, so neither counsel breached an essential duty by declining to raise this objection.

As for the life sentences, Wilson argued that law enforcement did not adequately investigate the stepdaughter, so his resulting convictions deprived him of due process, as well as constituted cruel and unusual punishment. The PCR court rejected his rationale, noting the evidence was put through the crucible of trial and a jury found beyond a reasonable doubt that he committed these crimes. Counsel thus did not breach an essential duty by declining to challenge his sentences on these grounds. Wilson now appeals.

## II. Analysis.

Criminal defendants are entitled to assistance of counsel. Iowa Const. art. I, § 10; U.S. Const. amend. VI. Defendants are deprived of that right when counsel fails to provide effective assistance. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). To show ineffective assistance, a defendant must show "both that counsel breached an essential duty and that constitutional prejudice resulted." *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024).

Counsel breaches an essential duty by failing to "meet the standard of performance required of a reasonably competent practitioner." *Id.* (cleaned up). The inquiry is demanding—we presume "the attorney acted competently" and will not find constitutionally defective assistance based on mere "[i]mprovident trial strategy, miscalculated tactics or mistakes in judgment." *Id.* (citation omitted). Even if counsel made one or more unprofessional errors, we will not find prejudice unless a defendant shows "a reasonable probability" that "the result of the proceeding would have been different" but for the error. *Id.* (citation omitted). Because Wilson's ineffective-assistance claims implicate constitutional rights, our review is de novo. *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021).

### A. Vouching.

During the criminal trial, the State offered two experts on child sex abuse— Colleen Brazil and Sarah Cleaver. While establishing Brazil's background and training, the State asked, "in your experience . . . [h]ave you seen cases where there is a delay between the last time a perpetration takes place and when the child reports abuse?" Brazil responded, "Yes. In my experience in interviewing

children, that's common." Wilson argues this testimony crossed the line into vouching, so trial counsel should have objected. We disagree.

"Expert testimony in child sexual abuse cases can be very beneficial to assist the jury in understanding some of the seemingly unusual behavior child victims tend to display." *Dudley*, 856 N.W.2d at 675. Children may not respond to abuse the way an adult juror might expect, and "[a]n expert witness, such as a psychologist or social worker, can help the jury understand these behaviors and other behaviors common to children who have suffered sexual abuse trauma." *Id.* Thus, an expert may "explain to a jury why children victims may delay reporting their sexual abuse," provided the expert stops short of "commenting directly on the child at issue and only testified generally about victims of sexual abuse." *Id.*

Brazil's testimony was expressly cabined to her "experience interviewing children"—she did not reference the stepdaughter at all. Her testimony therefore fell comfortably within the bounds of permissible expert opinion and any objection from trial counsel would have been meritless. Trial counsel thus did not breach an essential duty by not objecting to Brazil's statement. *State v. Horness*, 600 N.W.2d 294, 298 (Iowa 1999).

As for Sarah Cleaver, Wilson does not identify any statement within her testimony that he asserts crossed the line into improper vouching. Because Wilson makes only a passing reference to Cleaver, he has waived any ineffective-assistance argument based on her testimony. *See State v. Louwrens*, 792 N.W.2d 649, 650 n.1 (Iowa 2010).

**B. Burden of Proof.**

Wilson next argues that trial counsel should have objected when the State "impermissibly switched the burden of proof." Wilson's argument goes like this: the State's trial information identified an eighteen-month time frame for when the abuse occurred, he believes law enforcement does not adequately scrutinize sexual abuse victims, and to keep the burden of proof on the State, the State should have been required to use "independent" witnesses to prove "with more specificity" when the abuse occurred. Wilson alleges he was deprived of effective assistance when trial counsel failed to make this argument. Again, we disagree.

"[T]he State is not required to prove the precise time and place of a crime." *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003). This is particularly true in the context of sexual abuse committed against children, given "the inherent difficulty of establishing precise times and places of abuse to children due to the frequent delay in the discovery of the abuse, as well as other factors." *Id.*; *see also State v. Griffin*, 386 N.W.2d 529, 532 (Iowa 1986) (reiterating the importance of not requiring a specific time and place for sexual abuse against children and favorably citing an out-of-state case that affirmed a two-year time frame of alleged abuse).

As the State aptly puts it, a child victim may be "too young to care what day or month it was—and too young to realize (at the time) that those events would be significant later." Our cases thus instruct that "some liberality must be permitted in the specification of time and place where young children are involved." *Griffin*, 386 N.W.2d at 532. Because the State was not required to prove more specific dates and times when Wilson abused his stepdaughter, trial counsel had no duty to lodge a futile objection. *Horness*, 600 N.W.2d at 298.

**C. Life Sentence.**

Next, Wilson alleges his trial counsel should have argued his life sentences were so grossly disproportionate they constituted cruel and unusual punishment, as well as violated his due-process rights. We do not find this issue sufficiently briefed for appellate review. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). To support his cruel-and-unusual argument, Wilson points to a case containing "three general principles" that guide our disproportionality analysis and then summarily asserts that "when applying these principles" we should find his "sentence creates an inference of cross disproportionality." Though we can locate the three principles guiding our analysis, *see State v. Oliver*, 812 N.W.2d 636, 650 (Iowa 2012), we decline to go further and serve as Wilson's counsel by creating arguments under those principles and combing the record for favorable facts to support those arguments. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996). Wilson likewise offers no legal support for his novel due-process theory. Without sufficient advocacy on the merits of Wilson's sentencing argument, we find the issue waived.

**D. Direct Appeal**

Finally, Wilson incorporates his prior arguments and asserts that because trial counsel was ineffective under those grounds, his prior appellate counsel necessarily erred by not raising the issues on direct appeal. Yet Wilson has failed to prove trial counsel provided ineffective assistance with respect to vouching, the burden of proof, or his life sentences. It therefore follows that appellate counsel also did not breach any essential duties by forgoing these issues on direct appeal.

**AFFIRMED.**